REVISED - JULY 10, 1998

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-31289
_____


GERARD QUIRK and ROSE QUIRK, individually and on behalf of
JOEY QUIRK, GERRY QUIRK and RUSTY QUIRK,

Plaintiffs-Appellees,

VERSUS


MUSTANG ENGINEERING, INC., DEEPWATER PRODUCTION SYSTEMS, INC.,
BP EXPLORATION & OIL, INC., and TATHAM OFFSHORE, INC.,

Defendants-Third-Party Plaintiffs-Appellees,


VERSUS


J. FRAZER GAAR, M.D.,

Defendant-Third-Party Defendant-Appellant.


_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

June 29, 1998

Before GARWOOD, DAVIS, and EMILIO M. GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Dr. J. Frazer Gaar appeals from an order of the district court denying his motion for summary judgment based on absolute quasi-judicial immunity.  For the reasons set forth below, we affirm.

On June 5, 1993, while working as a pipe fitter for Seawolf Services, Inc., appellee Gerard Quirk tripped and fell backwards on an offshore platform, injuring his back. He was immediately treated at a local hospital emergency room. Quirk did not return to work after the accident and began receiving benefits under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA").

Soon after the accident, Quirk was examined by his family physician, Dr. Joseph Patton. Dr. Patton referred Quirk to Dr. Stuart Phillips, an orthopedic surgeon. After months of treatment, Dr. Phillips recommended that Quirk undergo surgery to correct a herniated disc. At the request of his employer's insurance company, Gray Insurance ("Gray"), Quirk was examined by Dr. Clifton Shepherd. Dr. Shepherd concluded that Quirk did not need surgery.

On July 15, 1994, a claims adjuster for Gray wrote Quirk's attorney concerning the conflicting medical opinions and suggested that Quirk submit to an Independent Medical Examination ("IME") by a third physician. The parties agreed to have Dr. Gaar perform the IME. After examining Quirk and reviewing his chart, Dr. Gaar issued a report in which he concluded that Quirk did not need surgery and that he was able to return to work. Consequently, in October 1994, Gray terminated Quirk's benefits.

Quirk subsequently filed a complaint with the Department of

Labor ("DOL") contesting the termination of his benefits.[1] On December 1, 1994, an informal conference was held by a DOL claims examiner.[2] After the conference, the claims examiner reviewed the materials in Quirk's file, including Dr. Gaar's report, and decided that Quirk was not entitled to further workers' compensation benefits.[3] In his memorandum of conference, the examiner expressly relied on Dr. Gaar's opinions, stating that "Dr. Gaar, the IME physician agreed to by both parties, released the claimant to return to work at his previous work and activities. As this was an IME agreed to by both parties and the doctor found no disability, there are no benefits due . . . ."

---

[1] Under the regulations governing the administration of the LHWCA, an employee may contest an employer's or a carrier's termination of benefits by filing a complaint or notice of contest with the office of the DOL district director having jurisdiction. *See* 20 C.F.R. § 702.261.

[2] The district director may hold an informal conference in an attempt to resolve a dispute. 20 C.F.R. § 702.311. Such conferences are conducted by the district director or a designee. 20 C.F.R. § 702.312.

[3] If the parties cannot come to an agreement during an informal conference, the district director or his or her designee brings the conference to a close, evaluates all the evidence available to him or her, and prepares a memorandum of conference setting forth all outstanding issues, such facts or allegations as appear material, and his or her recommendations and rationale for resolution of such issues. 20 C.F.R. § 702.316. Copies of the memorandum are sent to each of the parties who indicate whether they agree or disagree with the recommendations. *Id.* If either of the parties disagrees, then the district director or his or her designee may schedule further conferences as may bring about an agreement. *Id.* If the district director or his or her designee is satisfied that additional conferences would be unproductive, or if any party has requested a hearing, the case is transferred to an administrative law judge. *Id.*

On December 5, 1995, Dr. Phillips performed an emergency spinal fusion on Quirk. After the surgery, Quirk's DOL complaint became moot as Gray voluntarily reinstated Quirk's worker's compensation benefits and paid Quirk over $16,000 in benefits previously denied.

During the interim, on June 6, 1994, Quirk and his wife filed this action against defendants-appellees Mustang Engineering, Inc., and Deepwater Production Systems, Inc., subsequently adding defendants-appellees BP Exploration & Oil, Inc. and Tatham Offshore, Inc. Quirk alleged that defendants-appellees were responsible for the injuries he sustained. On June 27, 1997, defendants-appellees filed a third-party complaint against Dr. Gaar, alleging medical malpractice. On July 22, 1997, Quirk added Dr. Gaar as a defendant, also alleging medical malpractice.

On October 8, 1997, Dr. Gaar filed a motion for summary judgment based on absolute quasi-judicial immunity. After a hearing on November 13, 1997, the district court orally denied Dr. Gaar's motion. Dr. Gaar appeals. We have jurisdiction over interlocutory appeals from orders denying summary judgment based on absolute immunity where, as here, there are no material factual issues in dispute. *See Williams v. Collins*, 728 F.2d 721, 726 (5th Cir. 1984).

## II.

Dr. Gaar argues that he is entitled to absolute quasi-judicial

4

immunity from any civil liability based on the opinions he rendered in connection with the IME he performed on Quirk. He contends that he is entitled to such immunity because his opinions were relied on by the claims examiner and he thus functioned as a witness at the informal conference.

Witnesses receive absolute quasi-judicial immunity from subsequent damages liability arising from their participation in judicial proceedings because they are considered an "integral" part of the judicial process. *See Briscoe v. LaHue*, 460 U.S. 325, 335 (1983). "It is precisely the function of a judicial proceeding to determine where the truth lies," *id.* at 335 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 439 (1976) (White, J., concurring)), and witnesses play an essential role in that endeavor. If witnesses were subject to liability arising from their participation in judicial proceedings, however, they might be less inclined to come forward and provide "candid, objective, and undistorted" testimony. *Id.* at 333-34. Accordingly, witnesses are given absolute immunity so that "the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." *Id.* at 333 (quoting *Calkins v. Sumner*, 13 Wis. 193, 197 (1860)). In *Butz v. Economou,* 438 U.S. 478, 512-13 (1978), the Supreme Court held that an "adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from

5

suits for damages."

Although the parties dispute whether the informal conference was an "adjudication within a federal administrative agency," we need not decide that issue. Even if we were to determine that the informal conference was such an adjudication, we would nevertheless conclude that Dr. Gaar is not entitled to immunity. At the time Dr. Gaar rendered his opinions, not only was he unaware that his opinions would be used in an adjudicatory proceeding relating to Quirk's claim for LHWCA benefits, but no such proceeding was pending, scheduled, or even contemplated. As Dr. Gaar did not render his opinions in connection with or in anticipation of an adjudicatory proceeding, none of the considerations supporting witness immunity apply. Accordingly, there is no reason to afford Dr. Gaar immunity.

III.

For the reasons set out above, we conclude that the district court did not err in denying Dr. Gaar's motion for summary judgment.[4]

AFFIRMED.

EMILIO M. GARZA, Circuit Judge, dissenting:

The majority rejects Dr. Gaar's claim of immunity because at the time that Dr. Gaar gave his opinions, he was "unaware that his opinions would be used in an adjudicatory proceeding" and because "no such proceeding was pending, scheduled, or even contemplated."

_____

[4] We, of course, express no opinion as to Dr. Gaar's libility to Quirk or Mustang.

*See ante* at 5.   In denying his claim for witness immunity, the majority incorrectly focuses on what Dr. Gaar *thought* at the time that he rendered his opinions.   Dr. Gaar's mental state at that time and his corresponding medical opinion had no legal effect until Gray and the Department of Labor ("DOL") *used* his medical opinion (*i.e.,* Gray terminated Quirk's benefits and the DOL rejected Quirk's claim to further workers' compensation).   It was this *use* of Dr. Gaar's opinion that provided the basis for Quirk's medical malpractice claim.   Because the *use* of Dr. Gaar's medical opinion occurred in "an adjudication within a federal administrative agency,"[5] he is entitled to immunity for his medical opinion.   Accordingly, I respectfully dissent.

---

[5]   The DOL informal conference shares enough of the characteristics of the judicial process to constitute "an adjudication within a federal administrative agency." *Butz v. Economou*, 438 U.S. 478, 512-13, 98 S. Ct. 2894, 2913-14, 57 L. Ed. 2d 895 (1978).