**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 97-20683

_____


EUGENE E SHANKS, SR, doing business as Fliteline Maintenance
Incorporated, doing business as Fliteline Maintenance; FARM AND
RANCH AERIAL APPLICATOR SERVICES INCORPORATED;
GULF COAST AG INCORPORATED,


Plaintiffs-Appellees,

versus


ALLIEDSIGNAL, INC, doing business as Garrett Engine Division;
ET AL,


Defendants,


ALLIEDSIGNAL, INC, doing business as Garrett Engine Division;
PETER BAKER, doing business as Garrett Engine Division, doing
business as Alliedsignal, Inc; SANDY MEOUR, doing business as
Garrett Engine Division, doing business as Alliedsignal, Inc.


Defendants-Appellants.


Appeal from the United States District Court
for the Southern District of Texas

March 30, 1999

Before POLITZ, EMILIO M. GARZA, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This case begins with the crash of an agricultural aircraft in rural Louisiana. The aircraft had been manufactured by Defendants AlliedSignal, Inc., Peter Baker, and Sandy Meour (collectively "Allied"). It had been maintained by Plaintiffs Eugene Shanks, Farm and Ranch Aerial Applicator Services, and Gulf Coast AG, Inc. (collectively "Shanks"). Pursuant to 49 U.S.C. § 1132, the National Transportation Safety Board ("NTSB") conducted an official investigation to determine the probable cause of the crash. The NTSB designated Allied as a party to the investigation under 49 C.F.R. § 831.11. As a party, Allied participated in the NTSB investigation, which included a teardown of the aircraft's engine at Allied's facility in Houston, Texas.

Following its investigation, the NTSB issued a "Brief of Accident," as required by federal law.[1] Although the report did not mention Shanks explicitly, it concluded that the probable cause of the accident was the fact that "[t]he airplane was improperly maintained."[2] Shanks alleges that Allied conspired to manipulate the NTSB investigation and contributed to an accident report that was false

---

[1] The NTSB is obliged to "report on the facts and circumstances of each accident investigated by it." 49 U.S.C. § 1131(e). Its conclusions must be "issued in the form of a report or 'brief' of the incident or accident." 49 C.F.R. § 831.4.

[2] The section of the report entitled "Probable Cause" read:
The National Transportation Safety Board determines that the Probable Cause(s) of this accident was: A loss of control during a propeller underspeed condition which resulted in a stall. The underspeed condition was caused by a speeded spring failure as a result of a binding bogus propeller pitch control cam. The airplane was improperly maintained.

and misleading.[3] He also claims that Allied owed him a duty to rectify errors in the NTSB's report.[4] According to Shanks, the NTSB's false accident report led to his indictment on eight federal felony counts. Shanks also claims that the Federal Aviation Administration, prompted by the NTSB report, forced him to agree not to reapply for an airman mechanic's license for one year.

Shanks asserts numerous state law causes of action arising from Allied's conduct. His complaint alleges "defamation, tortious interference with business relations, intentional infliction of mental distress, common law negligence, unfair trade practices, negligent infliction of mental distress, intentional infliction of emotional distress, fraud and civil conspiracy." Allied filed a motion for summary judgment on the ground that it was immune from suit for statements made during the NTSB investigation. It argued that Texas law provides absolute immunity for any communications made in connection with judicial, quasi-judicial, or legislative proceedings. The district court denied Allied's motion, finding that the NTSB investigation was not a judicial, quasi-judicial, or legislative proceeding, nor were statements made during the investigation sufficiently connected to any other judicial, quasi-judicial, or legislative proceedings. Allied now appeals the district court's order denying its motion for summary judgment. We vacate that order and remand for further proceedings.

I

---

[3] After filing this lawsuit, Shanks petitioned the NTSB for reconsideration. In response, the NTSB issued a revised accident report, which found that the probable cause of the accident was pilot error. The revised report concluded that the probable cause of the accident was "the pilot's failure to maintain adequate airspeed, resulting in an inadvertent stall."

[4] In addition, Shanks contends that Defendant Sandy Meour made a defamatory statement many months after the NTSB investigation. His complaint also alleges that Allied's conduct "is continuing in nature and that such acts are not complete in themselves." On appeal, Shanks argues that this language refers to acts by Allied outside the NTSB investigation. As explained below, claims based on conduct other than communications made during the NTSB investigation are not properly before us on appeal. *See infra* at n.6.

Shanks argues that we lack jurisdiction over this appeal because the order from which Allied appeals is not a final decision. Under 28 U.S.C. § 1291, we have jurisdiction to hear "appeals from all final decisions of the district courts of the United States." We read this language to encompass interlocutory appeals "from a small category of decisions that, although they do not end the litigation, must nonetheless be considered 'final.'" *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S. Ct. 1203, 1208, 131 L. Ed. 2d 60 (1995). This doctrine, known as the collateral order doctrine, applies only to those decisions "that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Id.*

In *Quirk v. Mustang Engineering, Inc.*, 143 F.3d 973 (5th Cir. 1998), we asserted jurisdiction over an immunity claim almost identical to the one before us today. The defendant in *Quirk* moved for summary judgment on the ground that he was absolutely immune from suit for statements made during a quasi-judicial proceeding. The district court denied his motion, and the defendant appealed. We heard the appeal, finding that "[w]e have jurisdiction over interlocutory appeals denying summary judgment based on absolute immunity." *Id.* at 975.

The *Quirk* panel did not, however, specifically address whether an order denying such an immunity is properly deemed "final" under § 1291 and the collateral order doctrine. Nonetheless, an independent application of our precedent in that area compels the same result. "[O]rders denying certain immunities are strong candidates for prompt appeal under § 1291." *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 871, 114 S. Ct. 1992, 1998, 128 L. Ed. 2d 842 (1994). An immunity from suit is not only a means of prevailing on the merits, but an "entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806,

-4-

2815, 86 L. Ed. 2d 411 (1985). This entitlement is "effectively lost if a case is erroneously permitted to go to trial." *Swint*, 514 U.S. at 42, 115 S. Ct. at 1208 (emphasis omitted). In the parlance of the collateral order doctrine, a claim of immunity from suit is "effectively unreviewable" once the defendant is forced to go to trial, because he or she is permanently deprived of the right to avoid the burdens of litigation. *Id.* For this reason, we have heard appeals from interlocutory orders denying a defendant's assertion of immunity from suit. *See*, *e.g.*, *Cantu v. Rocha*, 77 F.3d 795, 804 (5th Cir. 1996); *Sorey v. Kellett*, 849 F.2d 960, 962 (5th Cir. 1988); *Williams v. Collins*, 728 F.2d 721, 726 (5th Cir. 1984).

We must, however, "view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." *Digital Equipment*, 511 U.S. at 873, 114 S. Ct. at 1999. As the Supreme Court has acknowledged, "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.'" *Id.* at 873, 114 S. Ct. at 1998. Consequently, when we assess whether interlocutory review is appropriate, "[t]he critical question . . . is whether 'the essence' of the claimed right is a right not to stand trial," *Van Cauwenberghe v. Biard*, 486 U.S. 517, 524, 108 S. Ct. 1945, 1950, 100 L. Ed. 2d 517 (1988). Thus our jurisdiction to review the order now appealed turns on whether Allied's claim of absolute immunity "provides a true immunity from suit and not a simple defense to liability." *Sorey*, 849 F.2d at 962; *see also Swint*, 514 U.S. at 43, 115 S. Ct. at 1208 (denying jurisdiction under the collateral order doctrine where defendant's claim was based on a "mere defense to liability" and not an "immunity from suit").[5]

_____

[5] When the district court denies a defendant's immunity-based summary judgment motion because of disputed factual issues, we do not have appellate jurisdiction under 28 U.S.C. § 1291. *See Johnson v. Jones*, 515 U.S. 304, 313, 115 S. Ct. 2151, 2156, 132 L. Ed. 2d 238 (1995) (denying appellate jurisdiction because the district court found that genuine issues of fact precluded granting summary judgment for defendants based on qualified immunity); *Petta v. Rivera*, 143 F.3d 895, 898

Allied bases its immunity claim on the rule of Texas law that communications made during the course of judicial, quasi-judicial, or legislative proceedings are "absolutely privileged." *Reagan v. Guardian Life Ins.*, 166 S.W.2d 909, 912 (Tex. 1942). Although appellate jurisdiction under § 1291 is a matter of federal law, we look to state law to determine whether the basis of Allied's claim is properly characterized as an immunity from suit or merely a defense to liability. *See Tamez v. City of San Marcos*, 62 F.3d 123, 125 (5th Cir. 1995) (assessing whether a defendant may appeal an interlocutory order denying a motion for summary judgment based on state law qualified immunity). According to the Texas Supreme Court, the absolute privilege claimed by Allied "is more properly thought of as an immunity." *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987). Communications subject to this privilege simply "cannot constitute the basis of a civil action." *Reagan*, 166 S.W.2d at 912. Where the privilege arises, "no action in damages . . . will lie." *Id.* One Texas court has held, in near perfect response to the jurisdictional inquiry now before us, that this "absolute privilege is not a defense. Rather, absolutely privileged communications are not actionable." *CEDA Corp. v. City of Houston*, 817 S.W.2d 846, 849 (Tex. App—Houston [1st Dist.] 1991, writ denied) (citations omitted). Such communications are "absolutely immune from civil liability." *Attaya v. Shoukfeh*, 962 S.W.2d 237, 240 (Tex. App.—Amarillo 1998, writ denied).

We are convinced that Texas law regards its privilege for communications made in the context of judicial, quasi-judicial, or legislative proceedings as a complete immunity from suit, not a mere defense to liability. To insist on a final judgment before reviewing a denial of that immunity could deprive Allied of its entitlement to avoid the burdens of trial. Allied may therefore appeal the district

---

(5th Cir. 1998) (same). In the present case, the district court denied Allied's motion as a matter of law.

court's rejection of its immunity claim as a collateral order under 28 U.S.C. § 1291.

## II

Allied contends that the district court erred in denying its motion for summary judgment. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). We review a district court's denial of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmovant. *See Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). Where, as here, a defendant moves for summary judgment based on a defense for which he or she would have the burden at trial, he or she must "establish each element of that defense as a matter of law." *Crescent Towing & Salvage Co., Inc. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986)).

Allied argues that it is absolutely immune under Texas law from any suit based on its communications with the NTSB. It claims immunity on the grounds that (1) the NTSB investigation was a quasi-judicial proceeding, (2) communications made during the NTSB investigation were preliminary to other quasi-judicial or judicial proceedings, and (3) communications made to the NTSB were connected to legislative proceedings. Shanks responds that the immunities provided by Texas law do not apply to communications made during NTSB investigations. Shanks also argues that a party to an NTSB investigation is precluded from claiming immunity in connection with litigation arising from that investigation.[6]

---

[6] Shanks makes two additional arguments that are not properly before us. First, Shanks's brief devotes four sentences to the argument that federal law preempts the state law immunities on which Allied relies. This claim was raised for the first time on appeal, and we shall not address it. *See Quenzer v. United States (In re Quenzer)*, 19 F.3d 163, 165 (5th Cir. 1993) ("Typically, we will not consider on appeal matters not presented to the trial court.").

A

We first address whether a defendant is entitled to absolute immunity for communications made in connection with accident investigations by the NTSB. Where, as here, a federal court exercises jurisdiction over state law causes of action based on diversity of citizenship, *see* 28 U.S.C. § 1332, we must apply state substantive law. *See Rogers v. Corrosion Prods., Inc.*, 42 F.3d 292, 295 (5th Cir. 1995) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). To determine state substantive law, we look to final decisions of the state's highest court. *See Transcontinental Gas Pipeline Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992). "When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Id.*

Although the Texas Supreme Court has never specifically decided whether communications during NTSB investigations are immune from suit, it has provided strong guidance to predict how it would rule on this particular issue. The immunity asserted by Allied "attaches only to a limited and select number of situations which involve the administration of the functions of the branches of

Second, Shanks contends that Allied committed actionable conduct outside the scope of the NTSB investigation, for which the immunity claimed by Allied would not apply. We decline to examine these claims, because the district court never addressed whether any actionable conduct took place outside of the NTSB investigation. "It is the general rule that a federal appellate court does not consider an issue not passed upon below." *Americans Disabled for Accessible Pub. Transp. v. Skinner*, 881 F.2d 1184, 1197 (3d. Cir. 1989) (en banc); *see also Baker v. Bell*, 630 F.2d 1046, 1055 (5th Cir. 1980) ("Generally this court will not reach the merits of an issue not considered by the district court."). More significantly, we lack jurisdiction over such claims, because there is no appealable order as to alleged conduct outside of the NTSB investigation. The decision now being appealed rejected Allied's argument "that its communications with the NTSB in connection with the accident investigation" are immune from suit. As to any claims that are not based on "communications with the NTSB in connection with the accident investigation," there is no appealable order. Without an appealable order, we cannot exercise appellate jurisdiction. *See In re Grand Jury Proceedings*, 724 F.2d 1157, 1159 (5th Cir. 1984) (holding that an appealable order is "a prerequisite for an appeal to this court").

government, such as statements made during legislative and judicial proceedings." *Hurlbut*, 749 S.W.2d at 768. This absolute immunity applies to quasi-judicial proceedings as well. *See Reagan v. Guardian Life Ins.*, 166 S.W.2d 909, 912 (Tex. 1942); *see also Matta v. May*, 118 F.3d 410, 415 (5th Cir. 1997) (holding that absolute immunity under Texas law "applies to quasi-judicial proceedings before governmental agencies"). In *Reagan v. Guardian Life Insurance Co.*, the Texas Supreme Court noted that an agency proceeding may be deemed quasi-judicial for immunity purposes where a statute confers upon the agency "the power to conduct investigations and hearings." *Reagan*, 166 S.W.2d at 913 (citing *Aransas Harbor Terminal Ry. Co. v. Taber*, 235 S.W. 841 (Tex. 1921)). During accident investigations, the NTSB unquestionably possesses these powers. *See* 49 U.S.C. § 1113(a) (power to conduct hearings); 49 U.S.C. § 1131(a)(1) (power to conduct investigations).

These cases provide solid grounds to predict that the Texas high court would find that NTSB accident investigations are quasi-judicial proceedings, from which it would follow that any communications made during such investigations are absolutely immune from suit. The Texas courts of appeal provide further support.[7] Texas courts have recognized six factors that are relevant to whether proceedings are quasi-judicial for purposes of absolute immunity:

(1)     the power to exercise judgment and discretion;
(2)     the power to hear and determine or to ascertain facts and decide;
(3)     the power to make binding orders and judgments;
(4)     the power to affect the personal or property rights of private persons;
(5)     the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and
(6)     the power to enforce decisions or impose penalties.

---

[7] When making an "*Erie*-guess" as to how a state's high court would decide an issue, it is proper to look to the decisions of lower state courts. *See Hill v. London, Stetelman, & Kirkwood, Inc.*, 906 F.2d 204, 207 (5th Cir. 1990).

*Village of Bayou Vista v. Glaskox*, 899 S.W.2d 826, 829 (Tex. App.—Houston [14th Dist.] 1995, no writ) (quoting *Parker v. Holbrook*, 647 S.W.2d 692, 695 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.)); *see also Town of South Padre Island v. Jacobs*, 736 S.W.2d 134, 144 (Tex. App.—Corpus Christi 1986, writ denied). NTSB investigations satisfy at least the first, second, and fifth of these criteria. The NTSB may ascertain facts and decide. *See* 49 U.S.C. § 1131(a) (empowering the NTSB to "establish the facts, circumstances, and cause or probable cause" of aircraft accidents). This power necessarily implies a power to exercise judgment and discretion. The NTSB may also "conduct hearings . . . , administer oaths, and require, by subpoena or otherwise, necessary witnesses and evidence." 49 U.S.C. § 1113(a)(1).

Admittedly, NTSB investigations lack other indicia of quasi-judicial proceedings. Such investigations, for example, "are not conducted for the purpose of determining the rights or liabilities of any person." 49 C.F.R. § 831.4. However, a proceeding need not meet all of the above criteria to be considered quasi-judicial. *See Parker*, 647 S.W.2d at 695. As discussed above, the leading Texas Supreme Court case on quasi-judicial proceedings noted that an agency proceeding may be deemed quasi-judicial simply where a statute confers upon the agency "the power to conduct investigations and hearings." *Reagan*, 166 S.W.2d at 913. Thus, although the factors are surely helpful guidelines, courts have not applied them formulaically, nor have they required that a threshold number of these criteria be satisfied.

Taking a more comprehensive look at the case law, we find only two situations in which Texas courts have found that communications to government agencies are not entitled to absolute immunity. The first involves unsolicited communications to law enforcement officials. In *Hurlbut v. Gulf Atlantic Life Insurance Co.*, 749 S.W.2d at 768, the Texas Supreme Court found that initial

-10-

communications "to a public officer . . . who is authorized or privileged to take action" are subject only to a qualified privilege, not the absolute immunity claimed by Allied. *See also Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex. Civ. App.—Corpus Christi 1977, no writ). In such cases, however, the challenged statements were made in advance of any formal proceeding or investigation. *See Hurlbut*, 749 S.W.2d at 764; *Zarate*, 553 S.W.2d at 654. Texas courts have clarified that when communications relate to an ongoing proceeding, absolute immunity still applies. *See Thomas v. Bracey*, 940 S.W.2d 340, 343 (Tex. App—San Antonio 1997, no writ). The communications for which Allied claims immunity were made in connection with an ongoing NTSB investigation.

Texas courts have also denied absolute immunity where the challenged communications are made to agencies that issue merely recommendations or preliminary findings. One case concerned a regional council of county governments charged with making recommendations to federal agencies on requests for health services grants. *See Parker*, 647 S.W.2d at 696. The court of appeals concluded that the council was not quasi-judicial, because its decisions were "preliminary in nature," and because the council was not "the final arbiter." *Id.* It is true that during an accident investigation, the NTSB is not the "final arbiter" of any entity's legal rights. However, its findings are more than mere recommendations. The NTSB must "establish the facts, circumstances, and cause or probable cause" of aircraft accidents. 49 U.S.C. § 1131(a)(1). Once it does so, its findings need not be approved or ratified by another agency. The NTSB has the final word.

Furthermore, it would be nonsensical to characterize the NTSB's investigation as "preliminary" to litigation over an aircraft accident, because by federal statute, no part of an NTSB report may be "used in a civil action for damages resulting from a matter mentioned in the report." 49 U.S.C. § 1154(b). Although the NTSB's conclusions are not relevant to any party's legal rights,

Congress has deemed the NTSB's findings sufficiently important that its investigations have "priority over any investigation by another department, agency, or instrumentality of the United States Government." 49 U.S.C. § 1131(a)(2). Therefore, we find inapposite Texas cases suggesting that absolute immunity does not apply to government agencies whose conclusions are merely preliminary.

For these reasons, we hold that an NTSB accident investigation would qualify as a quasi-judicial proceeding under Texas law. Thus Texas law grants absolute immunity from suit for statements made during such investigations.[8] The district court erred in finding the NTSB

---

[8] Absolute immunity unquestionably applies to Shanks's defamation claim. *See Reagan*, 166 S.W.2d at 912 ("An absolutely privileged communication is one for which . . . no remedy exists in a civil action for libel or slander."). However, Shanks pleads numerous causes of action in addition to defamation, including tortious interference with business relations, negligence, intentional infliction of emotional distress, and civil conspiracy. It is unclear whether, under Texas law, absolute immunity bars all causes of action arising from communications during a quasi-judicial proceeding.

The Texas Supreme Court has intimated that absolute immunity applies only to defamation actions. *See Bird v. W.C.W.*, 868 S.W.2d 767, 771 (Tex. 1994) (recognizing that in *James v. Brown*, 637 S.W.2d 914, 918 (Tex. 1982), the high court "declined to expand the privilege beyond libel and slander"). It clarified, however, that where a cause of action is "virtually indistinguishable" from a defamation claim, and where the damages sought "are basically defamation damages," absolute immunity still applies. *See Bird*, 868 S.W.2d at 771-72. It noted that a plaintiff should not be able to circumvent the policy behind absolute immunity merely by pleading creatively. *See id.* at 772 (citing *Doe v. Blake*, 809 F. Supp. 1020, 1028 (D. Conn. 1992)). Thus the Texas Supreme Court applied absolute immunity to a negligence action based on statements during judicial proceedings. *See Bird*, 868 S.W.2d at 771-72.

Lower Texas courts have also struggled with whether absolute immunity applies to causes of action other than defamation. Some courts have addressed whether absolute immunity applies to particular non-defamation causes of action. *See Rose v. First Am. Title Ins. Co.*, 907 S.W.2d 639, 643 (Tex. App.—Corpus Christi 1995, no writ) (rejecting the argument that absolute immunity "applies only to causes of action for defamation and not to intentional infliction of emotional distress"); *K.B. v. N.B.*, 811 S.W.2d 634, 640 (Tex. App.—San Antonio 1991, writ denied) (applying absolute immunity where the theory of recovery is intentional infliction of emotional distress); *City of Brady v. Bennie*, 735 S.W.2d 275, 278-79 (Tex. App.—Eastland 1987, no writ) (finding that although absolute immunity would apply to libel or slander claims, only qualified immunity would apply to cause of action for tortious interference). Some courts have applied absolute immunity to different types of claims without limitation. *See Hernandez v. Hayes*, 931 S.W.2d 648, 654 (Tex. App.—San Antonio 1996, writ denied) ("Although the [immunity from suit for statements made during a quasi-judicial proceeding] arises as a defense to defamation, it must be applied to all of

-12-

investigation was not a quasi-judicial proceeding for purposes of Texas immunity law.

B

Shanks also argues that NTSB policy precludes Allied's immunity claim. Specifically, Shanks points out that parties to an accident investigation are required to sign a "Statement of Party Representatives" *See* 49 C.F.R. § 831.11(b). The statement provides, among other things: "By placing their signatures hereon all participants agree that they will neither assert nor permit to be asserted on their behalf, any privilege in litigation, with respect to information or documents obtained during the course of and as a result of participation in the NTSB investigation."

Shanks's argument fails for several reasons. First, Allied never signed the Statement of Party Representatives or any other document containing such language. In fact, the provision requiring parties to sign the Statement of Party Representatives was not added to the NTSB regulations until 1997, four years after the NTSB's initial investigation into this matter had concluded. *See* 62 Fed. Reg. 3806, 3808 (1997) (adding current language in 49 C.F.R. § 831.11(b)). Second, even if the

appellant's causes of action."). Other courts have inquired whether the "essence" of a plaintiff's alternate cause of action sounds in defamation. *See Laub v. Pesikoff*, 979 S.W.2d 686, 690-92 (Tex. App.—Houston [1st Dist.] 1998, writ denied) (applying absolute immunity to causes of action for intentional interference, civil conspiracy, intentional infliction of emotional distress, and negligence, where "the essence of each of these claims is that [the plaintiff] suffered injury as a result of false statements during a judicial proceeding"); *Bennett v. Computer Assocs. Int'l, Inc.*, 932 S.W.2d 197, 204 (Tex. App.—Amarillo 1996, writ denied) (declining to apply absolute immunity to claim for tortious interference where defendant "undertook purportedly tortious conduct involving other than disparaging or false words"); *Martinez v. Hardy*, 864 S.W.2d 767, 776 (Tex. App.—Houston [14th Dist.] 1993, no writ) (applying absolute immunity to tortious interference cause of action where "gravamen of [plaintiff's] tortious interference claim is the allegedly defamatory statements").

Allied raises this issue cursorily, arguing in a footnote that although absolute immunity "was first developed in the context of defamation claims, . . . it is now clear that it applies to all theories of recovery based on the immunized communications." The district court never addressed this question, however, and we decline to examine it for the first time on appeal. We leave it for the district court to determine on remand whether absolute immunity applies to Shanks's other causes of action.

statement binds Allied nonetheless, its language does not cover the kind of substantive immunity asserted by Allied in this case. Its terms merely prohibit parties from asserting a privilege "with respect to information or documents obtained" during NTSB investigations. Thus the statement focuses on evidentiary matters, that is, the disclosure of "information or documents." The Tenth Circuit has described it as a "*discovery* waiver[]," by which parties "g[i]ve up *discovery* privileges potentially assertable in a tort liability case." *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 647 (10th Cir. 1990) (emphasis added). The NTSB has characterized its policy as "requir[ing] parties to waive any objection to civil discovery about their investigatory role in the event litigation commences." *Id.* at 637.

For these reasons, we find that the NTSB's Statement of Party Representatives applies only to evidentiary privileges from the disclosure of information, not to substantive immunities from suit. It therefore does not prevent Allied from claiming that its conduct during the NTSB investigation is immune from suit under Texas law. Nor has Shanks identified any NTSB policy independent of the Statement of Party Representatives that would preclude Allied from asserting immunity.

## III

Accordingly, we VACATE the district court's order denying Allied's motion for summary judgment and REMAND for further proceedings not inconsistent with this opinion.