# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2016

Lyle W. Cayce
Clerk

No. 15-10500

SAMUEL TROICE; PUNGA PUNGA FINANCIAL, LIMITED, individually and on behalf of a class of all others similarly situated; PAM REED,

Plaintiffs - Appellees

v.

PROSKAUER ROSE, L.L.P.; CHADBOURNE AND PARKE, LIMITED LIABILITY PARTNERSHIP; THOMAS V. SJOBLOM,

Defendants - Appellants

Appeals from the United States District Court
for the Northern District of Texas

Before BARKSDALE, CLEMENT, and HAYNES, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This case represents more fallout from Allen Stanford's massive Ponzi scheme. Plaintiffs filed this putative class action against one of Stanford's lawyers, Thomas Sjoblom, and the law firms where he worked, arguing that they aided and abetted Stanford's fraud and conspired to thwart the SEC's investigation of Stanford's scheme. After this case went to the Supreme Court and back on an issue not relevant here, defendants moved to dismiss plaintiffs' complaint as barred by attorney immunity under Texas law. The district court denied that motion, holding that plaintiffs' allegations met a "fraud exception" to attorney immunity, and defendants appealed.

No. 15-10500

We are now confronted with two issues. First, under Texas law, is attorney immunity a true immunity of suit, such that denial of a motion to dismiss based on attorney immunity is appealable under the collateral order doctrine? Second, should we reverse the district court's order denying defendants' motions to dismiss based on attorney immunity now that the Texas Supreme Court has clarified that there is no "fraud exception" to attorney immunity?

For the reasons below, we answer both questions in the affirmative.

I.

As a partner at the law firm of Chadbourne & Parke LLP, and later at Proskauer Rose LLP, Thomas Sjoblom represented certain companies (collectively, "Stanford Financial") that Stanford used to perpetrate his scheme. Plaintiffs are various entities and individuals who purchased certificates of deposit ("CDs") issued by Stanford Financial; those CDs, plaintiffs allege, are now worthless. Plaintiffs believe that Sjoblom, while acting as "outside counsel to represent the interests of Stanford Financial . . . in the SEC investigation," helped to cover up Stanford's scheme by thwarting that investigation in certain ways.

As a result, plaintiffs filed this putative class action against Sjoblom, Chadbourne & Parke, and Proskauer Rose,[1] asserting claims for (a) aiding and abetting violations of the Texas Securities Act, (b) aiding and abetting common law fraud, and (c) conspiring to defraud the putative class. Plaintiffs base their claims entirely on the following acts Sjoblom allegedly committed during his representation of Stanford Financial in the SEC investigation:

- Sending a letter to the SEC arguing that the SEC did not have jurisdiction over Stanford Financial's CD sales because the CDs were not securities under U.S. law;

---

[1] Plaintiffs claim that the law firms are liable under a respondeat superior theory.

2

No. 15-10500

- Making certain statements to the SEC regarding its document requests to Antigua (where Stanford Financial was based) and regarding Stanford Financial's credibility and legitimacy;

- Stating to SEC lawyers that certain of Stanford Financial's executives were better positioned to explain, in depositions, the details of Stanford Financial's business; and

- Failing to correct purported lies and suborning perjury during a Stanford Financial executive's sworn SEC testimony.

Defendants moved to dismiss plaintiffs' complaint on several grounds, including that it was precluded by the Securities Litigation Uniform Standards Act ("SLUSA") and that defendants were entitled to attorney immunity under Texas law. Without reaching the attorney immunity argument, the district court dismissed the complaint as precluded by SLUSA. We reversed, *see Roland v. Green*, 675 F.3d 503 (5th Cir. 2012), and the Supreme Court affirmed that reversal, *see Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058 (2014).

On remand, the district court denied defendants' motions to dismiss, in which defendants argued that they were immune from suit under the attorney immunity doctrine. *Troice v. Proskauer Rose, LLP*, No. 3:90-CV-1600-N, 2015 WL 1219522 (N.D. Tex. Mar. 4, 2015). The district court held that plaintiffs had sufficiently pleaded a "fraud exception" to attorney immunity by asserting a "colorable claim for fraud," and denied the motions to dismiss. *Id.* at *4. Defendants moved for reconsideration, but the district court denied those motions as well. Defendants appealed. Plaintiffs then moved to dismiss the appeal, arguing that the district court's order denying the motions to dismiss is not an appealable collateral order. That motion was carried with the case.

The day after plaintiffs moved to dismiss the appeal—about a month after defendants appealed—the Texas Supreme Court held that "[f]raud is not an exception to attorney immunity" under Texas law. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 484 (Tex. 2015). Thus, "[m]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client

3

No. 15-10500

representation or render it 'foreign to the duties of an attorney'" such that the attorney would not be immune. *Id.* at 483. Defendants therefore argue that because the Texas Supreme Court has now clarified that there is no fraud exception to attorney immunity, the district court erred by applying such an exception.

## II.

We review de novo a district court's denial of a motion to dismiss based on immunity. *See Doe v. Robertson*, 751 F.3d 383, 386 (5th Cir. 2014). We also review de novo a district court's interpretation of state law. *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 492 (5th Cir. 2006). We are "bound to answer the question the way the state's highest court would resolve the issue." *Occidental Chem. Corp. v. Elliott Turbomachinery Co.*, 84 F.3d 172, 175 (5th Cir. 1996).

## III.

Plaintiffs moved to dismiss this appeal, arguing that the district court's order denying defendants' motions to dismiss is not an appealable collateral order. The collateral order doctrine permits appeals from orders that are deemed final under 28 U.S.C. § 1291 because they "(1) conclusively determine the disputed question; (2) resolve an issue that is completely separate from the merits of the action; and (3) would be effectively unreviewable on appeal from a final judgment." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 766 (5th Cir. 1996). Only the third element, reviewability, is implicated here because it is undisputed that the order conclusively determines the question of immunity and is separate from the merits of the action. And "orders denying certain immunities are strong candidates for prompt appeal under § 1291." *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 871 (1994).

Whether the district court's order here would be effectively unreviewable on appeal from final judgment depends on whether attorney immunity in

No. 15-10500

Texas "provides a true immunity from suit and not a simple defense to liability." *Sorey v. Kellett*, 849 F.2d 960, 962 (5th Cir. 1988); *see, e.g.*, *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1339 (11th Cir. 2007) (querying whether defendants claiming immunity have "a substantial claim to a true immunity from suit: i.e., an immunity that not only insulates the party from liability, but also prevents the party from being exposed to discovery and/or trial").[2] "[I]t is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Will v. Hallock*, 546 U.S. 345, 353 (2006). And "[a]lthough appellate jurisdiction under § 1291 is a matter of federal law, we look to state law to determine whether the basis of [defendants'] claim is properly characterized as an immunity from suit or merely a defense to liability." *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 992 (5th Cir. 1999).

Although the Texas Supreme Court has never stated as much, attorney immunity is properly characterized as a true immunity from suit, not as a defense to liability. Two related considerations inform this conclusion: the policies underlying the doctrine of attorney immunity, and comparison with similar Texas-law doctrines that we have held to be true immunities.

The policies underlying the attorney immunity doctrine, as the Texas Supreme Court has explained, suggest that attorney immunity should be an

---

[2] Orders denying immunity "are immediately appealable only if they are predicated on pure conclusions of law, and not if a 'genuine issue of material fact' precludes summary judgment" on the question of immunity. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 531 (5th Cir. 1997). But an order denying immunity "at the 12(b)(6) stage, where the district court must assume that factual allegations are true, is a 'purely legal' denial of . . . immunity." *Bullard v. City of Hous.*, 95 F.3d 48, 1996 WL 405777, at *1 n.2 (5th Cir. 1996) (unpublished). Here, the district court denied defendants' motions to dismiss—thus accepting plaintiffs' allegations as true—so we need only determine whether defendants are entitled to immunity as a matter of law.

immunity from suit. *Cf. Sorey*, 849 F.2d at 963. The doctrine "stem[s] from the broad declaration . . . that 'attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages.'" *Cantey Hanger*, 467 S.W.3d at 481 (quoting *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App.— Dallas 1910, writ ref'd)). In other words, the doctrine is "intended to ensure 'loyal, faithful, and aggressive representation by attorneys employed as advocates.'" *Id.* (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.— Dallas 2000, pet. denied)). Attorney immunity is necessary "to avoid the inevitable conflict that would arise if [an attorney] were 'forced constantly to balance his own potential exposure against his client's best interest.'" *Id.* at 483 (quoting *Alpert v. Crain, Caton & James, PC*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)).

The purpose for attorney immunity is thus quite similar to the purposes animating other immunities that Texas has recognized as providing true immunity. *See, e.g.*, *B.K. v. Cox*, 116 S.W.3d 351, 358 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (judicial immunity); *Miller v. Curry*, 625 S.W.2d 84, 87 (Tex. App.—Forth Worth 1981, writ ref'd n.r.e.) (prosecutorial immunity); *see also Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942) (litigation privilege). All share an objective of safeguarding the unfettered exercise of judgment in the judicial system by protecting the person exercising it not only against liability but also against incurring the costs of defending a lawsuit. All therefore protect against imperiling "a substantial public interest": the effective functioning of our adversary system. *Will*, 546 U.S. at 353. Nothing indicates that Texas courts view the protections afforded attorneys in private practice as less important to that system than those afforded prosecutors, judges, and those making statements before judicial, quasi-judicial, or legislative proceedings.

Also instructive is our own analysis of whether orders denying motions to dismiss based on Texas's litigation privilege are appealable. In *Shanks*, we concluded that the litigation privilege provided true immunity under Texas law and, thus, orders denying that immunity were appealable. 169 F.3d 988. There, we described as a "near perfect response to the jurisdictional inquiry" a Texas court's description of privileged communications as "not actionable." *Id.* at 992. We also noted another Texas court's description of the doctrine as providing "absolut[e] immun[ity] from civil liability." *Id.* The Texas Supreme Court has described attorney immunity in the very same terms: Conduct covered by attorney immunity is "not actionable," and the doctrine provides "immun[ity] from civil liability." *Cantey Hanger*, 467 S.W.3d at 481. Those descriptions, too, are near perfect responses to our jurisdictional inquiry.

Plaintiffs counter that attorney immunity is not a true immunity from suit because it is an affirmative defense. But describing something as an affirmative defense simply indicates who bears the burden of proof; it does not indicate that it is a simple defense to liability. *See, e.g.*, *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Indeed, other true immunities are also affirmative defenses under Texas law. *See, e.g.*, *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994) (qualified immunity); *B.K.*, 116 S.W.3d at 356 (judicial immunity).

Plaintiffs also argue that attorney immunity is not a true immunity because it does not exempt defendants from discovery. In support, they cite *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc) (per curiam). There, the en banc court stated that because qualified immunity is an immunity from suit, it is intended to confer "a right not merely to avoid standing trial, but also to avoid the burdens of 'such pretrial matters as discovery.'" *Id.* at 323 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Plaintiffs thus argue that because in Texas, no court has held that an attorney

defendant can avoid discovery, attorney immunity is not a true immunity. But in *McClendon*, the en banc court was merely describing how immunity from suit normally operates, not creating a test for whether something is a true immunity.

What is more, even defendants asserting qualified immunity often must respond to discovery to help the court resolve factual disputes in order to determine whether they are entitled to qualified immunity. Discovery is surely "to be avoided if possible," but defendants asserting qualified immunity are not, as a rule, categorically exempt. *Mitchell*, 472 U.S. at 526; *see id.* ("Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts."). Our precedents reflect that principle: Orders denying immunity are immediately appealable if based on conclusions of law; orders denying immunity because of a genuine dispute of fact are not, and defendants in such cases must submit to some discovery. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 531 (5th Cir. 1997); *see Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("*After* the district court finds a plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987))). That no Texas court has held that defendants asserting attorney immunity are categorically exempt from discovery, then, does not mean that attorney immunity is merely a defense to liability.

In short, because the policies underlying attorney immunity support the conclusion that Texas courts seek to protect attorneys against even defending a lawsuit, and because Texas courts describe conduct covered by attorney

No. 15-10500

immunity as not actionable (and attorneys engaging in that conduct as immune from suit), we conclude that the Texas Supreme Court would consider attorney immunity to be a true immunity from suit. As a result, we hold that the district court's order denying defendants' motions to dismiss on the basis of attorney immunity under Texas law is an appealable collateral order.

IV.

We now turn to the merits. Defendants argue that the Texas Supreme Court's decision in *Cantey Hanger* shows that the district court erred in denying their motions to dismiss based on attorney immunity. 467 S.W.3d 477. Lacking the Texas Supreme Court's recent guidance, the district court relied on decisions from Texas intermediate appellate courts to hold that "all a plaintiff must do to avoid immunity is assert a colorable claim for fraud." *Troice*, 2015 WL 1219522, at *4. A few months later, the Texas Supreme Court held in *Cantey Hanger* that "[f]raud is not an exception to attorney immunity; rather, the defense does not extend to fraudulent conduct that is outside the scope of an attorney's legal representation of his client, just as it does not extend to other wrongful conduct outside the scope of representation." 467 S.W.3d at 484.

As the United States Supreme Court has explained, we "conform [our] orders to the state law as of the time of the entry. Intervening and conflicting decisions will thus cause the reversal of judgments which were correct when entered." *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543 (1941). Thus, we must apply *Cantey Hanger* here. Defendants contend that, because *Cantey Hanger* makes clear that the fraud exception does not exist, they should have been granted attorney immunity because "the *type* of conduct alleged falls squarely within the scope of [Sjoblom's] representation" of his clients. *Cantey Hanger*, 467 S.W.3d at 485. We agree.

Indeed, Plaintiffs do not dispute before this court that Sjoblom's alleged conduct was "the kind of conduct in which an attorney engages when discharging his duties to his client." *Id.* at 482. Nor could they credibly do so. Plaintiffs alleged that, in representing Stanford Financial in the SEC's investigation, Sjoblom: sent a letter arguing, using legal authorities, that the SEC did not have jurisdiction; communicated with the SEC about its document requests and about Stanford Financial's credibility and legitimacy; stated that certain Stanford Financial executives would be more informative deponents than others; and represented a Stanford Financial executive during a deposition. These are classic examples of an attorney's conduct in representing his client. That some of it was allegedly wrongful, or that he allegedly carried out some of his responsibilities in a fraudulent manner, is no matter. *Cantey Hanger*, 467 S.W.3d at 485 ("Byrd essentially complains that the manner in which Cantey Hanger carried out a specific responsibility assigned to it" was wrongful, but "[m]eritorious or not, the *type* of conduct alleged falls squarely within the scope of [the] representation."); *see also Alpert*, 178 S.W.3d at 406 ("The immunity focuses on the type of conduct, not on whether the conduct was meritorious in the context of the underlying lawsuit."). In other words, we do not conclude that Sjoblom's actions "d[id] not involve the provision of legal services," *Cantey Hanger*, 467 S.W.3d at 482, or that he engaged in acts that were "entirely foreign to the duties of an attorney," *Poole v. Hous. & T.C. Ry. Co.*, 58 Tex. 134, 137 (Tex. 1882).

Plaintiffs counter that, even if Sjoblom's alleged conduct fell within the scope of his representation of Stanford Financial and even if there is no fraud

exception to attorney immunity, defendants still are not entitled to attorney immunity. In support, plaintiffs make three arguments.[3] Each fails.

First, plaintiffs contend that attorney immunity applies only against party opponents, not third parties like plaintiffs. Yet in support, plaintiffs simply cite cases applying immunity against party opponents. Those cases do not rule out that immunity applies against other parties, and several of them expressly contemplate the possibility, describing attorney immunity as applying against "non-clients." *See, e.g.*, *Alpert*, 178 S.W.3d at 405. Further, in *Cantey Hanger* itself, the Texas Supreme Court repeatedly described attorney immunity as "protecting attorneys from liability to *non-clients*." 467 S.W.3d at 481 (emphasis added). Attorney immunity is intended to assure attorneys that they will not be "liable for damages," full stop, not that they are protected from liability but only from opposing parties. *Kruegel*, 126 S.W. at 345. The idea is to immunize conduct, not to protect attorneys only from certain potential plaintiffs. Other Texas cases support our conclusion that plaintiffs' proposed rule does not exist. *See, e.g.*, *Easton v. Phelan*, No. 01-10-01067-CV, 2012 WL 1650024, at *10 (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.). We therefore reject plaintiffs' argument that, under Texas law, attorneys are entitled to immunity only against party opponents.

Second, plaintiffs argue that attorney immunity applies only in the litigation context, and thus Sjoblom's conduct is not covered. We do not reach this argument because plaintiffs waived it by not raising it below. *See, e.g.*, *VRC LLC v. City of Dallas*, 460 F.3d 607, 612 (5th Cir. 2006) (deeming argument raised by appellee for the first time on appeal waived); *Woodmen of*

---

[3] In a 28(j) letter, plaintiffs argued for the first time that attorney immunity does not apply to their Texas Securities Act claims. Plaintiffs waived this argument by failing to brief it. *See, e.g.*, *Little v. USAA Cas. Ins. Co.*, No. 09-30948, 2010 WL 4909869, at *4 n.6 (5th Cir. Apr. 2, 2010) (per curiam) (refusing to address argument first raised in 28(j) letter).

No. 15-10500

*World Life Ins. Soc'y/Omaha Woodmen Life Ins. Soc'y v. JRY*, 320 F. App'x 216, 221 (5th Cir. 2009) (same).

Third, plaintiffs maintain that Sjoblom's alleged conduct falls within a "crime exception" to attorney immunity. Plaintiffs waived this argument as well by not raising it before the district court. *See City of Dallas*, 460 F.3d at 612. Below, they argued only that Sjoblom's alleged "illegal or fraudulent" conduct met a fraud exception to attorney immunity. But plaintiffs did not identify illegal conduct as fitting a "crime exception" distinct from the fraud exception under Texas law.

V.

Below, the district court refused to grant defendants immunity under the attorney immunity doctrine solely because plaintiffs pleaded that Sjoblom had engaged in fraud and conspiracy to commit fraud. *Troice*, 2015 WL 1219522, at *3; *see id.* at *4 (noting language in Texas cases "indicating that all a plaintiff must do to avoid immunity is assert a colorable claim for fraud"). The Texas Supreme Court has now clarified that simply claiming that an attorney's conduct was fraudulent does not allow plaintiffs to circumvent attorney immunity. *Cantey Hanger*, 467 S.W.3d at 484. Accordingly, we REVERSE the district court's order denying defendants' motions to dismiss and RENDER judgment that the case is dismissed with prejudice.