IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 9, 2008

Charles R. Fulbruge III
Clerk

No. 06-51689

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LINDA WILLIAMS DWYER,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
No. 1:06-CR-171

Before HIGGINBOTHAM, DAVIS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Linda Dwyer contends that a restitution order erroneously includes costs incurred by the victim that are not recoverable under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. Because Dwyer raises this

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

argument for the first time on appeal, we review for plain error and affirm.

I.

Dwyer pleaded guilty of bank fraud. As part of the sentence, she is ordered to pay $1,465,835.45 in restitution to Lawrence Miller, the victim. The restitution includes $545,736.45 in net losses, $235,444 for interest payments on brokerage account debt, $283,064 used to pay margin calls, $350,000 in attorneys' fees, and $51,591 in accounting fees.

Dwyer served as Miller's bookkeeper from 1997 to July 2005. When she began working for him, she was under court order to disclose to any potential employer her history of embezzlement, credit card theft, and forgery. She failed to abide by that order and did not inform Miller of her criminal history. As his bookkeeper, she had access to his personal accounts, the accounts of several of his businesses, and the trusts he had established for his two children.

Dwyer used that access to forge Miller's signature and write checks to herself or to third parties on her behalf. To divert funds to her personal use, she destroyed checks written by Miller to pay real estate mortgages, income taxes, and life insurance. Because she had destroyed the checks Miller had written to the Internal Revenue Service "I.R.S."), he received notices regarding payments owed the I.R.S., which Dywer destroyed as well. She also lied to the I.R.S. about Miller's whereabouts, stating that he had been in a serious accident and was recovering in France. All of this resulted in I.R.S. liens on Miller's house and other real estate. Dwyer also forged authorization to Miller's investment accounts and obtained margin loans on his brokerage accounts, which resulted in the interest charges and margin calls.

Additionally, on the day Miller became aware of Dwyer's malfeasance and

fired her, she immediately went to a bank and diverted another $30,000 to herself.  She also destroyed bank statements and other documents, ensuring that it would be almost impossible for Miller to determine the repercussions of her actions.  Finally, she refused to assist Miller in ascertaining the full extent of his liabilities resulting from her conduct.

Miller employed a law firm and accountants in an attempt to determine the damage done by Dwyer and to sue her.  The fruits of their investigation were turned over to the F.B.I. and the U.S. Attorney's Office, enabling the government to prosecute Dwyer without conducting a significant investigation.  The attorneys retained by Miller also pursued claims against third-party financial institutions and Dwyer's family members who had received embezzled funds; they also brought garnishment claims against financial institutions where Dwyer or her family members held accounts, and negotiated settlements with financial institutions and credit card companies.  The accountants retained by Miller aided the investigation of Dwyer, helped repair the damage she had caused, and set up new accounting systems for Miller.

## II.

To find plain error, we must decide that (1) there is error; (2) the error is plain; and (3) the error affects a substantial right.  United States v. Olano, 507 U.S. 725, 732-34 (1993).  Even if we find plain error, "we will not exercise our discretion to correct a forfeited error unless it seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Branam, 231 F.3d 931, 933 (5th Cir. 2000) (citing Olano, 507 U.S. at 735-36).

Dwyer was ordered to pay restitution under the MVRA, which requires a

person convicted of a crime of fraud or deceit to "pay [the victim] an amount equal to the greater of the value of the property on the date of the damage, loss, or destruction; or the value of the property on the date of sentencing." 18 U.S.C. § 3663A(a), (b)(1)(B), (c)(1)(A)(ii). The defendant must also reimburse the victim for "lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense." Id. § 3663A(b)(4). Apart from those expenses authorized in § 3663A(b)(4), a restitution award cannot reimburse a victim for consequential losses, United States v. Onyiego, 286 F.3d 249, 256 (5th Cir. 2002); the award is limited to losses directly resulting from the offense of conviction, United States v. Martin, 488 F.3d 657, 660-61 (5th Cir. 2007).

For purpose of determining whether § 3663A authorizes the instant award of restitution, we divide the amount of the restitution order into five parts: Miller's net losses, the interest owed on the fraudulently obtained loans, the cost of satisfying the margin calls, the attorneys' fees, and the accounting fees. Dwyer does not contest that she must reimburse Miller's net, direct losses; she also concedes that the interest payments owed on loans she fraudulently obtained from Miller's brokerage accounts are properly included. Thus, she contests the inclusion of the cost of satisfying the margin calls, the attorneys' fees, and the accounting fees.

When Dwyer fraudulently obtained loans from Miller's brokerage accounts, stock in those accounts was automatically pledged as collateral for the loans. Much of the stock serving as collateral was Dell Computer stock. Miller's broker issued the margin calls because the price of Dell's stock was falling, hence the value of the collateral was declining, and the broker wanted cash, either by

4

sale of the stock or by payment.

Dwyer argues that the margin calls resulted from the decline of Dell's stock, which cannot be attributed to her. But for Dwyer's fraudulent loans, however, Miller's Dell stock would not have been pledged as collateral and open to a margin call. Whether the margin calls were caused by the drop in Dell's stock price and not attributable to Dwyer is a question of fact, and "questions of fact capable of resolution by the district court can never constitute plain error." United States v. Chung, 261 F.3d 536, 540 (5th Cir. 2001). Thus, inclusion of the margin call expenses in the restitution amount was not plain error.

Furthermore, inclusion of the cost to satisfy the margin calls did not affect Dwyer's substantial rights, because the court could have imposed a fine equal to the amount of the margin call expenses. In United States v. Miller, 406 F.3d 323, 330-31 (5th Cir. 2005), we held that, where a court was "statutorily empowered to impose a fine in addition to restitution," a restitution order that included a potentially impermissible payment to the I.R.S. did not affect substantial rights, because "the district court could have, and indeed likely would have imposed a fine, making any error harmless." In that case, we noted that the only reason the court did not impose a fine and restitution was that the defendant could not afford both. Id.

Here, the court could have imposed a fine up to $1 million, 18 U.S.C. § 1344, but chose not to, stating, "There will be no fine in the case, because of the restitution, but there is a $100 mandatory assessment." 3 R. 20. Thus, even if it was error to include the margin call expenses, the court could have, and likely would have, imposed a fine equal to the margin call cost, rendering the inclusion harmless error.

We address the last two elements of the restitution orderSSthe attorneys' fees and accounting feesSStogether. The government asserts that § 3663(b)(4) authorizes these payments because they were incurred during participation in the investigation or prosecution of the offense, because the attorneys' and accountants' investigation served as the basis for the prosecution. Furthermore, Miller's attorneys and accountants cooperated with the F.B.I. to the extent that they turned over information and materials collected during their investigation. The government also avers that the attorneys' investigations of third party financial institutions and credit card companies was made necessary by Dwyer's crime and were, therefore, properly considered as part of the investigation of Dwyer herself. This is especially the case given Dwyer's unwillingness to cooperate with Miller in determining the extent of her crime.

Dwyer contends that § 3663A(b)(4) authorizes reimbursement only if there is an ongoing government investigation or prosecution at the time the expenses are incurred. According to Dwyer, because Miller's attorneys' and accounting fees were incurred before the information was turned over to the government, while there was no ongoing government investigation or prosecution, § 3663A-(b)(4) does not authorize inclusion of the fees in the restitution award.

Given that there is no precedent resolving the question whether expenses incurred before the government's investigation were incurred "during" the investigation for purposes of § 3663A(b)(4), it is not plain that the court's inclusion of those fees was "'obvious,' 'clear,' or 'readily apparent,' [an error that is] so conspicuous that 'the trial judge and prosecutor were derelict in countenancing [it], even absent the defendant's timely assistance detecting [it].'" Miller, 406 F.3d at 330 (quoting United States v. Dupre, 117 F.3d 810, 817 (5th Cir. 1997) (quoting United States v. Calverley, 37 F.3d 160, 163 (5th Cir. 1994) (en banc))). In

Miller, where the defendant challenged an order to pay restitution to the victim of his embezzlement and to the I.R.S. for failure to pay taxes on the embezzled funds, we said that, although the defendant's argument had "some intuitive appeal," "[a]bsent any precedent directly supporting [his] contention, it cannot be said that the alleged error was 'plain' for purposes of our review." Id.

We continued in Miller and, as noted above, held that even if the court had erred, the defendant was not entitled to relief, because the error did not affect a substantial right, in light of the fact that the court could have imposed a fine as well as restitution. Id. at 330-31. We concluded that, in light of "the novelty of Miller's claim (a fact that belies the 'plain' nature of the supposed error), coupled with the likely harmless nature of the purported error, we cannot say that the trial court's action was plain error." Id. at 331.

The instant case is like Miller. Dwyer's argument against including the attorneys' fees and accounting fees is not supported by any precedent, rendering the decision to include those fees less than plainly wrong. Additionally, the court in this case, like the court in Miller, chose not to impose a fine because of the restitution, thereby rendering harmless any error in including the costs of the margin calls, the attorneys' fees, or accounting fees.

The judgment of sentence is AFFIRMED.