# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 7, 2013

Lyle W. Cayce
Clerk

No. 12-31018

SHEILA GOUDEAU,

Plaintiff - Appellee

v.

EAST BATON ROUGE PARISH SCHOOL BOARD; SHILONDA SHAMLIN, Individually and in her official capacity as Principal; JOHN DILWORTH, In his official capacity as Superintendent; CHARLOTTE PLACIDE, Individually and in her official capacity,

Defendants - Appellants

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:10-CV-303

Before SMITH, HAYNES, and GRAVES, Circuit Judges.

HAYNES, Circuit Judge:[*]

Sheila Goudeau, an elementary school teacher employed by the East Baton Rouge Parish School Board ("the School Board"), sued the School Board, her former principal, and two superintendents for retaliation in violation of the First Amendment. The School Board, Shilonda Shamlin, and Charlotte Placide

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-31018

(collectively, "the Defendants") moved for summary judgment.[1]  The district court denied Shamlin and Placide qualified immunity and concluded that the School Board could be liable under a theory of municipal liability.[2]  We AFFIRM the denial of qualified immunity for Shamlin, but REVERSE the court's denial of summary judgment for Placide and the School Board and RENDER judgment in those defendants' favor.

## I.  FACTUAL & PROCEDURAL HISTORY

Goudeau taught at Riveroaks Elementary School from 2001 to 2009.[3]  For the 2008-2009 school year, Shilonda Shamlin—principal of Riveroaks since 2006—assigned Goudeau to teach fourth grade.  Their good working relationship became strained after Shamlin instructed Goudeau, verbally and in writing, to artificially inflate students' grades.

During meetings Goudeau attended with other fourth-grade teachers, Shamlin announced that no student was to receive a grade of less than 60—a "high F"; Shamlin also directed Goudeau to change some grades from "F" to "D." Shamlin's "Monday Morning Memos" reinforced that policy, with which Goudeau and her colleagues disagreed.

Most of the teachers followed the grading mandate to avoid repercussions from Shamlin.  Goudeau, however, tried to give her students the grades they deserved regardless of whether they were below 60.  Those attempts were

---

[1]  John Dilworth also moved for summary judgment, but he was sued only in his official capacity and, therefore, did not seek qualified immunity.

[2]  The district court dismissed Goudeau's state-law and substantive-due-process claims, which are not at issue.

[3]  Because this is an interlocutory appeal from a denial of qualified immunity, all facts are presented as alleged by Goudeau.  *See Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) ("The limitation of our interlocutory appellate jurisdiction to questions of law prohibits our consideration of the correctness of the plaintiff's version of the facts." (alterations omitted) (citation and internal quotation marks omitted)).

No. 12-31018

opposed by Shamlin and were often thwarted by office staff, who changed grades in accordance with Shamlin's wishes.

Shamlin threatened to discipline and transfer Goudeau if she did not comply with Shamlin's grading policy. As a result of the pressure resulting from the policy and the harassment she incurred for complaining about it, Goudeau alleges that she began suffering from stress, anxiety, and crying spells. Eventually, Shamlin threatened to have Goudeau fired if she did not agree to a transfer to Villa del Rey, which Goudeau alleges is a less prestigious school and viewed as retribution.

Goudeau acquiesced to the transfer but reported Shamlin's grading policy to an assistant superintendent, Paula Johnson, whose administrative domain included Riveroaks. Johnson characterized the complaints from teachers about Shamlin's Monday Morning Memos as "personal" issues. Johnson also concluded that Shamlin's instructions did not encompass changing grades insofar as they only required adjusting a "low F" to a "high F."

Goudeau filed an "Official Complaint Against Employee Form," which prompted a "Level I" meeting with Shamlin that ended abruptly when Goudeau refused to sign a letter drafted by Shamlin. The complaint was escalated to "Level II." In preparation for the "Level II" hearing, the school system's general counsel, Domoine Rutledge, admonished Shamlin that Louisiana state law prohibited principals from "exercising any influence whatsoever regarding the assignment of grades."[4] Rutledge also determined that setting the minimum grade at 60 violated the district's Pupil Progression Plan.

---

[4] Specifically, Louisiana law provides that "[n]o school board member, school superintendent, . . . [or] principal . . . shall attempt, directly or indirectly, to influence, alter, or otherwise affect the grade received by a student from his teacher except as otherwise specifically permitted by this Section." LA. REV. STAT. ANN. § 17:414.2 (West 2013).

No. 12-31018

At a "Level III" hearing, Interim Chief Academic Officer Herman Brister concluded that Shamlin had "failed to adhere to the [School] Board approved grading scale outlined in the Pupil Progression Plan for the 2008-2009 school year." Brister later stated that altering a numerical grade upward would violate the plan even if the associated letter remained an "F." Defendant John Dilworth, who succeeded Charlotte Placide as superintendent, agreed that Shamlin had failed to follow the grading plan, but no action was taken against Shamlin based on Goudeau's complaint. Goudeau alleges that Shamlin then transferred her to a less desirable school in retaliation for her comments.

Goudeau sued under 42 U.S.C. § 1983, alleging that the Defendants had violated her First Amendment rights. The Defendants moved for summary judgment arguing that Shamlin and Placide were entitled to qualified immunity and the School Board could not be liable under a theory of municipal liability. The district court denied the Defendants relief on these issues. *See Goudeau v. E. Baton Rouge Parish Sch. Bd.*, No. 10-303-FJP-SCR, 2012 WL 8466124, at *11 (M.D. La. July 31, 2012). The Defendants appealed.

## II. STANDARD OF REVIEW

"[I]n an interlocutory appeal we lack the power to review the district court's decision that a genuine factual dispute exists. Therefore, we . . . consider only whether the district court erred in assessing the legal significance of the conduct that [it] deemed sufficiently supported for purposes of summary judgment." *Kinney v. Weaver*, 367 F.3d 337, 348, 375-76 (5th Cir. 2004) (en banc) ("Our standard of review for qualified immunity interlocutory appeals requires us to accept the facts in the light most favorable to [p]laintiffs." (emphasis removed)). "[T]he district court's finding that a *genuine* factual dispute exists is a factual determination that this court is prohibited from reviewing in this interlocutory appeal. . . . But the district court's determination that a particular dispute is *material* is a reviewable legal determination." *Good*, 601 F.3d at 397

4

No. 12-31018

(citation omitted).  In exercising that limited jurisdiction, we review de novo the denial of summary judgment.  *Id.* at 398.

## III.  DISCUSSION

A.  Qualified Immunity: Shamlin

Qualified immunity shields government officials from liability "when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).  "The entitlement is an immunity from suit . . . [that] is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis removed).  The qualified immunity doctrine recognizes that government officials can perform their duties effectively "only if they reasonably can anticipate when their conduct may give rise to liability . . . and only if unjustified lawsuits are quickly terminated." *Davis v. Scherer*, 468 U.S. 183, 195 (1984).

"The basic steps of our qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Morgan*, 659 F.3d at 371 (citation and internal quotation marks omitted).  Only the first of those determinations is at issue.[5]

Goudeau bases her § 1983 claim for employment retaliation on the Defendants' alleged violation of her First Amendment free speech rights.

---

[5]  The Defendants did not argue before the district court or on appeal that the right asserted by Goudeau was not clearly established at the time of the alleged violation. Accordingly, in light of our limited scope of review in this interlocutory appeal, we decline to address the district court's conclusion that the right at issue was clearly established. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.,* 627 F.3d 547, 551 n.2 (5th Cir. 2010) (a party which "neither briefed nor argued" an issue had abandoned it); *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 993 n.6 (5th Cir. 1999) (observing in the context of an interlocutory appeal that we will not consider issues that were not first presented to the district court); *United States v. Jenkins*, 974 F.2d 32, 34 (5th Cir. 1992) ("[C]ourts of appeals should conduct only a limited review in interlocutory appeals.").

No. 12-31018

Importantly, "[p]ublic employees do not surrender all their free speech rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen on matters of public concern." *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 691 (5th Cir. 2007). Nevertheless, establishing a § 1983 claim for employment retaliation based on having engaged in protected speech requires a public employee to establish that

> (1) [s]he suffered an adverse employment action . . . ; (2) [s]he spoke as a citizen on a matter of public concern . . . ; (3) h[er] interest in the speech outweighs the government's interest in the efficient provision of public services . . . ; and (4) the speech precipitated the adverse employment action.

*Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (citations and internal quotation marks omitted).

1. Adverse Employment Action

Shamlin contends that Goudeau did not suffer an adverse employment action because there is no evidence that the school to which she transferred is inferior to Riveroaks. She also relies on Louisiana state law for the proposition that a transfer is not necessarily a demotion. Under the law of this circuit, however, "[i]t is . . . well established that, for the purposes of a § 1983 retaliation claim, an adverse employment action can include a transfer . . . ." *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999). Whether Villa del Ray is in fact less prestigious than Riveroaks is not at issue in this interlocutory appeal; it will be a matter for determination in further proceedings in the district court. *See Good*, 601 F.3d at 397. Relying as we must at this stage on Goudeau's version of events, her transfer is cognizable as an adverse employment action under *Sharp*.

6

No. 12-31018

2. Public Concern

Shamlin also maintains that Goudeau's speech is not protected because she failed to establish that she spoke on a matter of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008) (citation and quotation marks omitted). It is well established that speech concerning official misconduct involves a matter of public concern. *See, e.g.*, *Modica v. Taylor*, 465 F.3d 174, 180-81 (5th Cir. 2006) (holding that misuse of public funds and official malfeasance are matters of public concern); *Wallace v. County of Comal*, 400 F.3d 284, 289-91 (5th Cir. 2005) ("[T]here is perhaps no subset of matters of public concern more important than bringing official misconduct to light." (citation and quotation marks omitted)); *Kinney*, 367 F.3d at 369 ("[I]t is well-established in the jurisprudence of both the Supreme Court and this court that official misconduct is of great First Amendment significance . . . ."); *Branton v. City of Dallas*, 272 F.3d 730, 745 (5th Cir. 2001) ("We have held that public employees' speech reporting official misconduct, wrongdoing, or malfeasance on the part of public employees involves matters of public concern.").

According to the district court, there is at least a genuine dispute that Goudeau's speech contained the allegation that "a school employee with supervisory powers [was] requiring teachers to follow her rule that a teacher must change students' grades in violation of established Louisiana law and school board policy." *Goudeau*, 2012 WL 8466124, at *6. Goudeau's allegation against Shamlin did not concern an isolated incident with a single student, but instead involved an ongoing practice in which a principal instructs her teachers to change their students' grades in violation of the law. This allegation of official misconduct in violation of state law makes Goudeau's speech a matter of public concern.

7

No. 12-31018

The Defendants' argument that Goudeau's speech is not of public concern because it only related to a personal dispute with Shamlin is unavailing. First, the district court determined that there was at least a genuine dispute that Goudeau's speech went beyond personal employment issues and concerned a school official instructing teachers to change students' grades in violation of Louisiana law and school board policy. *Goudeau*, 2012 WL 8466124, at *6. Second, even if Goudeau's speech included what the district court described as a "squabble over teaching practices and job performance," *id.,* the inclusion of issues of private concern in speech does not render it unprotected, but instead merely renders it "mixed speech," *see Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005). We have established several principles to consider when deciding whether a speaker's "mixed speech" relates to a matter of public concern. These principles involve consideration of the content, context, and form of the speech and evaluate whether the speech: "inform[s] the populace of more than the fact of an employee's employment grievance," is "made against the backdrop of public debate," and is not simply made "in furtherance of a personal employer-employee dispute." *Id.* at 187-88 (citations and quotation marks omitted); *see also Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 372 (5th Cir. 2000), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Here, Goudeau's allegations concerning the grading policy go beyond her personal employment grievance and were not simply made in furtherance of an employment dispute. As the district court observed, she argues that she spoke out about the grading policy because she sought to address "the public school system's implement[ation of] an illegal act and its resulting effect on the public (i.e., children's education), [and] the students who were supposed to be educated." *See Goudeau*, 2012 WL 8466124, at *6. Considering the evidence as presented by Goudeau, *see Good*, 601 F.3d at 397, the district court did not err

8

in its legal conclusion that Goudeau's allegations involved an issue of public concern when she spoke about the modification of students' grades in violation of the law.

This prong also involves consideration of whether Goudeau's speech was uttered as a private citizen or as an employee. *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006);[6] *Nixon*, 511 F.3d at 497 (citing *Garcetti*, 547 U.S. at 418). However, none of the Defendants argued to the district court or in their briefing on appeal that Goudeau's speech is not protected based on *Garcetti*'s requirement that she speak as a private citizen. As a result, Shamlin has waived any argument on this issue in this interlocutory appeal, and we do not reach this question.[7] *See Gen. Universal Sys. v. HAL Inc.*, 500 F.3d 444, 454 (5th

_____

[6] Both before and after *Garcetti*, our precedents have examined whether the public employee's speech were on a matter of public concern. *See, e.g.*, *Nixon*, 511 F.3d at 497; *Branton*, 272 F.3d at 745. *Garcetti* did not overrule our precedents regarding this point; indeed, *Garcetti* requires such a consideration. *See* 547 U.S. at 418 (explaining that courts must consider whether the individual's speech related to "a matter of public concern"). Therefore, although the dissenting opinion suggests otherwise, *Garcetti* confirms our prior precedent recognizing the importance of analyzing the subject matter of an individual's speech in this context to ensure that it relates to a matter of public concern.

[7] Contrary to the dissenting opinion's suggestion, we do not decline to address whether Goudeau spoke as a private citizen or employee because the parties "misstated the law" or failed to cite the appropriate precedent. The failure to cite *Garcetti* is not the problem; the failure to present any argument or analysis of this issue is. Thus, we decline to raise and determine the "private citizen" issue (particularly at an interlocutory appeal stage) because Shamlin did not raise it, brief it, or point to any facts supporting or opposing a conclusion that Goudeau was or was not acting as a private citizen in this regard. *See Douglas W. ex rel. Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 210 n.4 (5th Cir. 1998) ("[F]ailure to provide any legal or factual analysis of an issue on appeal waives that issue."); *see also United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) ("It is a well worn principle that the failure to raise an issue on appeal constitutes waiver of that argument."); *Jenkins*, 974 F.2d at 34 ("[C]ourts of appeals should conduct only a limited review in interlocutory appeals."). There is nothing unusual about our approach. Indeed, in many different types of cases, we have repeatedly declined to consider issues (finding them waived or abandoned) that were not adequately briefed or argued by the parties on appeal. *See, e.g.*, *United States v. Bolar*, 483 F. App'x 876, 883 n.3 (5th Cir. 2012) (unpublished), *cert. denied*, 133 S. Ct. 900 (2013) (explaining that although a "[r]eview of the [Sentencing Guidelines] calculation does reveal an error in the extortion value used to determine the guidelines range," the issue is waived because the defendant did not raise it on appeal); *In re Katrina Canal Breaches Litig.*, 620

No. 12-31018

Cir. 2007) (observing that even when an issue is mentioned in passing in a brief, the party waives the issue when it fails to present sufficient argument in support of its position in the body of the brief); *see also United States v. Charles,* 469 F.3d 402, 408 (5th Cir. 2006) ("Inadequately briefed issues are deemed abandoned."); *Shanks*, 169 F.3d at 993 n.6 (observing in the context of an interlocutory appeal that we will not consider arguments not presented to the district court).[8] We thus affirm the district court's denial of qualified immunity for Shamlin.[9]

## B.  Qualified Immunity: Placide

However, we conclude that the district court erred when it denied Placide's request for immunity.  The record is devoid of any evidence suggesting that Placide was aware of or participated in the events precipitating the alleged violation of Goudeau's First Amendment rights.  Indeed, apart from alleging that Placide "did nothing to prevent or stop" Shamlin's conduct, the complaint does not contain any specific allegation of wrongdoing on the part of Placide.

---

F.3d 455, 459 n.3 (5th Cir. 2010) (holding that the appellant's argument that the government-contractor immunity defense does not apply based on *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), was waived because it was not raised in the appellant's opening brief); *Douglas*, 158 F.3d at 210 n.4 (holding that review of a district court's potential error in striking several post-trial exhibits was waived when the plaintiff failed to provide any "argument or authority in support of his position").  Therefore, unlike our decisions in *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008), and *Williams*, 480 F.3d at 692, we have no occasion to consider whether Goudeau spoke as a private citizen or employee.

[8]  Similarly, given the limited scope of our review on interlocutory appeal, we decline to address the final two elements of the protected speech analysis—namely, whether Goudeau's interest in the speech outweighs the government's interest in the efficient provision of public services and whether the speech precipitated the adverse employment action—because the Defendants did not address them before the district court or on appeal. *See Tex. Med. Bd.,* 627 F.3d at 551; *Shanks*, 169 F.3d at 993 n.6; *Jenkins*, 974 F.2d at 34.

[9]  Importantly, our holding today does not automatically equate allegations of official malfeasance with speech of public concern.  Instead, our analysis centers on the subject matter of Goudeau's speech because it was the focus of the parties' arguments.  Had the parties presented argument concerning the role in which Goudeau spoke—i.e., whether she spoke as a private citizen or employee—our analysis would necessarily have included a consideration of this issue. *See, e.g., Davis*, 518 F.3d at 312; *Williams*, 480 F.3d at 692.

No. 12-31018

Moreover, Goudeau's response to the Defendants' motion for summary judgment and her briefing on appeal are similarly devoid of any discussion relating to Placide's involvement in this matter.

When asked during oral argument, Goudeau's attorney suggested that Placide violated Goudeau's constitutional rights because she had constructive knowledge of the grade-changing policy.  Such an argument is unavailing, however, because regardless of whether Placide had constructive or actual knowledge of the grading policy, the potential constitutional violation alleged by Goudeau is not the implementation of the grading policy *per se*, but the infringement on her First Amendment rights in the form of employment retaliation for her exercise of those rights.  Because Goudeau has not alleged or presented any evidence that Placide participated in the purported adverse employment decision, we must conclude that the district court erred in denying Placide qualified immunity.  *See Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 365 (5th Cir. 2007) (holding that certain defendants were entitled to qualified immunity when the facts as presented by the plaintiff failed to establish the defendants' involvement in the alleged constitutional violation).

C.  Municipal Liability: The School Board

The School Board argues that the district court erred by denying summary judgment relief to it.[10]  "Under § 1983, a municipality or local governmental entity such as an independent school district may be held liable only for acts for

---

[10]  While government entities, such as the School Board, generally cannot raise immunity defenses on interlocutory appeal, *see Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005), the district court certified its decision for interlocutory review, and we granted the Defendants' motion for leave to appeal the denial of summary judgment pursuant to our authority under 28 U.S.C. § 1292(b).  As a result, we have jurisdiction to consider the School Board's argument.  *See Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 461 (5th Cir. 2005); *see also Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. Feb. 1981) ("Because [this court] may not proceed without requisite jurisdiction, it is incumbent upon federal courts trial and appellate to constantly examine the basis of jurisdiction, doing so on [their] own motion if necessary.").

which it is actually responsible." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (noting that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable [for purposes of § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Consequently, "[t]o establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken pursuant to an official municipal policy." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (citation and internal quotation marks omitted).  To this end, "[a] plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541-42 (citation and internal quotation marks omitted).  The plaintiff must also "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997).

Goudeau's complaint alleges that the School Board "knew . . . Shamlin . . . was forcing [Goudeau] to alter the grades of [her] students . . . [and] did nothing to prevent or stop it."  The district court determined that there were genuine issues of material fact concerning whether the School Board had an official policy of influencing the grades that teachers provided their students.  *See Goudeau*, 2012 WL 8466124, at *9.  Goudeau's complaint and the district court's conclusion, however, misapprehend the nature of the official policy or custom that Goudeau was required to allege.  In order to establish the School Board's liability based on an adverse employment decision in response to her protected speech, Goudeau needed to demonstrate a policy or custom targeting the right that was violated (i.e., the right to engage in

No. 12-31018

protected speech free from retaliation), rather than a policy concerning conduct about which she spoke (i.e., the changing of students' grades). *See, e.g.*, *Wallace v. Dallas Indep. Sch. Dist.*, No. 3:97-CV-2820-L, 2000 WL 575219, at *1 (N.D. Tex. May 11, 2000) (dismissing a plaintiff's claim for municipal liability for employment retaliation based on speech when the plaintiffs "failed to allege that [the school district] ha[d] an official policy or custom of retaliating against employees who exercise their First Amendment rights"); *Hill v. Silsbee Indep. Sch. Dist.*, 933 F.Supp. 616, 623 (E.D. Tex. 1996) (dismissing § 1983 claim for want of "official policy or custom of retaliating against its employees for exercising their First Amendment freedom of speech rights"). Goudeau's allegations against the School Board, however, merely relate to her claims that it did nothing to stop Shamlin from influencing the assignment of students' grades in violation of Louisiana law and school board policy. Indeed, the record is devoid of any evidence or allegations that the School Board had any policy or custom directed at curtailing the First Amendment rights of public employees.[11] Therefore, the district court's denial of summary judgment as it relates to the School Board must be reversed.

## CONCLUSION

Accordingly, the district court's decision is AFFIRMED as to the denial of qualified immunity to Shamlin, and  REVERSED as to the other two defendants. Judgment is RENDERED in favor of Placide and the School Board.

---

[11] Goudeau argued in her memorandum in opposition to summary judgment and in her brief on appeal that the School Board interfered with her First Amendment right to assign grades to her students. *See Parate v. Isibor*, 868 F.2d 821, 827 (6th Cir. 1989) ("[T]he assignment of a letter grade is symbolic communication intended to send a specific message to the student [and, therefore,] is entitled to some measure of First Amendment protection."). We decline to consider whether the assignment of grades implicates First Amendment concerns because Goudeau's complaint does not seek relief for this alleged violation. Instead, her § 1983 claim is based on employment retaliation for speaking out about the grading policy and, therefore, any argument concerning a teacher's First Amendment right to assign grades is irrelevant to the present matter.

No. 12-31018

JERRY E. SMITH, Circuit Judge, dissenting:

Because Sheila Goudeau has not alleged facts sufficient to show that she spoke as a private citizen on a matter of public concern, I respectfully dissent from the majority's decision to deny qualified immunity.

I.

The majority elects to address whether Goudeau's speech was on a "matter of public concern" but refuses to consider whether it was "uttered as a private citizen or as an employee" as required by *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006), and its Fifth Circuit progeny. The majority does so on the ground that "none of the Defendants argued to the district court or in their briefing on appeal that Goudeau's speech is not protected based on *Garcetti*'s requirement that she speak as a private citizen," and as a result, "Shamlin has waived any argument on this issue." There is, however, no waiver.

Whether the speech is on a matter of public concern is intimately connected to whether Goudeau was speaking as a private citizen or as an employee. As the majority acknowledges, this prong of the employee speech test is whether Goudeau spoke "*as a citizen* on a matter of public concern" (emphasis added). The majority adds that "[t]his prong also involves consideration of whether Goudeau's speech was uttered as a private citizen or as an employee" (citing, *inter alia*, *Garcetti*, *id.*). That, of course, is consistent with the Supreme Court's leading decisions, including the one the majority declines to apply, *Garcetti*, *id.* ("*Pickering* and the cases decided in its wake identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke *as a citizen* on a matter of public concern . . . . Ceballos did not act *as a citizen* when he went

14

about conducting his daily professional activities . . . ." (emphasis added)).[1]

Neither party waived the argument regarding public concern, and the majority focuses precisely on that issue. That the parties *misstated the law* with respect to that prong of our employee speech cases—by overlooking the requirement that the speech be made as a private citizen rather than as an employee—is no justification for this court's accepting the law as the parties have described it.[2]

It may be that the parties did not specifically cite this circuit's cases elaborating on the private-citizen requirement of the public-concern test (though the district court at one point did mention *Garcetti*). But neither did the parties mention any of the cases that the majority cites as justification for the conclusion that Goudeau's speech was on a matter of public concern.

The key to today's holding is the set of cases suggesting that reporting official misconduct, such as the misuse of public funds, is a matter of public concern.[3] Yet the only one of those cases cited by either party is *Kinney*, and for a completely different proposition. Perhaps more remarkably, all of these cases *predate Garcetti* and this court's *Garcetti* progeny. If the majority is willing to delve into outdated caselaw cited by neither party to flesh out the requirements

---

[1] *See Pickering v. Bd. of Ed. of Twp. High Sch.*, 391 U.S. 563, 568 (1968) ("The problem in any case is to arrive at a balance between the interests of the teacher, *as a citizen*, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees" (emphasis added).).

[2] *Cf. Davis v. McKinney*, 518 F.3d 304, 315 (5th Cir. 2008) ("The district court did not discuss the individual components of Davis' speech listed above or consider whether each category of speech was related to plaintiff's job duties. Instead, it treated the Complaint Letter and other communications as a whole. However, because the question of whether a communication is made as an employee or as a citizen is a question of law, we proceed with the analysis [of the individual components].").

[3] *See Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006); *Wallace v. Cnty. of Comal*, 400 F.3d 284 (5th Cir. 2005); *Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) (en banc); *Branton v. City of Dall.*, 272 F.3d 730 (5th Cir. 2001).

No. 12-31018

of the public-concern test, then it should be willing to address this circuit's more recent and apposite cases elaborating on the private-citizen component of that test. When that test is applied, Goudeau does not state a constitutional claim.

## II.

By finding that Goudeau's speech was a matter of public concern—and by ignoring that she was not speaking as a private citizen—the majority disregards *Williams v. Dallas Independent School District*, 480 F.3d 689 (5th Cir. 2007) (per curiam), and *Davis*. Those decisions require that our first task be "to determine whether [Goudeau's] speech was part of her official duties, that is whether she spoke as a citizen or as part of her public job." *Davis*, 518 F.3d at 312. Interpreting the most recent Supreme Court case on public-employee speech, this court in *Williams* explained that "we must shift our focus from the content of the speech to the role the speaker occupied when he said it." *Williams*, 480 F.3d at 692 (citing *Garcetti*, 547 U.S. at 421–22). "Even if [] speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to [a] worker's official duties." *Id.*

Goudeau alleges that she voiced displeasure with the grade-inflation policy to its progenitor, Shamlin, who subsequently harassed and threatened her and eventually transferred her to a less prestigious school. Goudeau then complained to Johnson, and after Johnson took no action, Goudeau filed a grievance that made its way up Shamlin's chain of command through three levels of adjudication. As Goudeau's attorney admitted at oral argument, there is no evidence that Goudeau ever complained to anyone at any entity outside the school board's purview.

These facts fall squarely within our caselaw holding that an employee's grievances brought up the chain of command are not protected speech. Although "it is not dispositive that a public employee's statements are made internally. . .

16

No. 12-31018

the caselaw is unanimous in holding that [an] employee's communications that relate to his own job function up the chain of command, at least within his own department or division, fall within his official duties and are not entitled to First Amendment protection." *Davis*, 518 F.3d at 313 n.3 (citation omitted). Like the statements of the plaintiffs in *Williams* and *Garcetti*, Goudeau's speech was made internally, was routed through her chain of command, and focused on her own job function. *See Garcetti*, 547 U.S. at 414; *Williams*, 480 F.3d at 692–94.

Goudeau was not required to complain about Shamlin's grade-changing policy, but that fact "does not mean [she] was not acting within the course of performing [her] job." *Williams*, 480 F.3d at 694. Unlike the plaintiffs in *Davis* and *Charles v. Grief*, 522 F.3d 508 (5th Cir. 2008), Goudeau did not contact any governmental stakeholders outside the school system, such as state legislators or federal agencies. *See Charles*, 522 F.3d at 510; *Davis*, 518 F.3d at 314.

The majority's citation of cases saying that speech on the misuse of public funds, illegal activity, or other official malfeasance is automatically of public concern also ignores *Williams* and *Davis*. In *Williams*, an athletic director wrote his superiors complaining precisely about the misuse of athletic funds, yet that was not sufficient to state a First Amendment claim, because his "speech was made in the course of performing his employment." *Williams*, 480 F.3d at 694.

In *Davis*, part of the complaint was that hospital physicians were viewing child pornography on work computers and that an investigation into the illegal activity was thwarted by administrative officials. Yet this court held that even those allegations of illegality—because they were made *within* the university hospital system—were "clearly made [by Davis] as an employee." Only those allegations made to the FBI and the EEOC "were not made [by Davis] as an employee." *Davis*, 518 F.3d at 315–16.

When she complained about Shamlin's grade-altering policy to Shamlin's supervisors, Goudeau was speaking pursuant to her official duties, not as a citi-

17

zen.  As a result, defendants' alleged violation of school-board policy and state law neither implicates the First Amendment nor violates § 1983.  Because Goudeau's claim does not pass the test established by *Garcetti*, the case ought to be at an end:  Goudeau has failed to plead a constitutional violation, and all defendants are entitled to qualified immunity.[4]  I respectfully dissent.

---

[4] Further, it is hardly evident that Goudeau's and the public's interest in the speech would outweigh the normal governmental interest that schools could assert in promoting uniformity of classroom policies.  We need not reach *that* argument, however, because this prong of the *Pickering* test *was* actually waived.