# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-10874

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JERMAINE FREDERICK FRAZIER,

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CR-247-10

Before SMITH, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:*

Jermaine Frazier challenges the district court's restitution order under the Mandatory Victim Restitution Act ("MVRA"). For the following reasons, we VACATE the restitution order and REMAND for resentencing.

## I.

Together with ten others, Frazier was charged with various financial crimes in a vast mortgage fraud case involving a conspiracy to defraud

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10874

residential mortgage lenders. The defendants' scheme involved recruiting false borrowers ("straw borrowers") with acceptable consumer credit standings to act as investors in residential properties. The defendants would fabricate these straw borrowers' financial information in order to obtain loans. On the other side of the transaction, they negotiated sales prices with sellers of distressed and pre-foreclosure properties. By inflating the homes' sales prices, they were able to generate surplus loan proceeds.

In July 2010, Frazier entered into a plea agreement, pleading guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. In exchange for the dismissal of his remaining counts, he was to provide financial evidence and testimony as needed. The agreement also contained an appeal waiver waiving his rights to direct or collateral appeals, except as to issues involving calculation of the maximum punishment, arithmetic error, the voluntariness of the agreement, and ineffective assistance of counsel.[1] Frazier testified at trial, where the remaining defendants (except for one, Suzette Switzer Hinds) were convicted on all counts.

Frazier's sentencing took place on August 8, 2012. The court sentenced him to 46 months confinement and held him jointly and severally liable for $2,044,950. It based its restitution calculation on Frazier's presentence investigation report ("PSR"), which listed twenty-one fraudulent real estate transactions in which he participated. Frazier did not object to the restitution award at his sentencing. He filed his notice of appeal on August 22, 2012, and challenges the district court's restitution order.[2]

---

[1] The parties agree that Frazier's appellate waiver does not bar this appeal because Frazier's argument is that his restitution award exceeds the statutory maximum. *See United States v. Sharma*, 703 F.3d 318, 321 n.1 (5th Cir. 2012).

[2] Frazier also appeals what he identifies as two clerical errors in the district court's final judgment: 1. that he agreed in his plea deal to a specific restitution amount, and 2. that he was liable for bank fraud when he only pled guilty to wire fraud. The government does not

No. 12-10874

Frazier's appeal relies substantially on information discovered during his co-defendants' hearings months later, where his co-defendants established that at least some of the loans at issue were sold on the secondary market, and that the government often did not have information on who purchased the loans, when, or for how much. Frazier claims that the district court's restitution order violated the MVRA because the court calculated the amounts based solely on outstanding principal balances, and failed to account for transactions in secondary markets or other offsets to lenders' losses. As a result, Frazier claims that the restitution order resulted in awards to financial institutions that did not sustain actual losses, and awards in excess to the losses he actually caused.

## II.

"This court reviews the legality of a restitution order de novo and the amount of the restitution order for an abuse of discretion." *United States v. Arledge*, 553 F.3d 881, 897 (5th Cir. 2008). But when a defendant fails to object to the restitution order either in the PSR or at sentencing, we review for plain error. *United States v. Maturin*, 488 F.3d 657, 559–60 (5th Cir. 2007). "Under plain error review, we will reverse only where there was (1) an error, (2) that was clear and obvious, (3) that affected the defendant's substantial rights, and (4) that, if not corrected, would seriously affect the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Jefferson*, 751 F.3d 314, 322 (5th Cir. 2014) (internal quotation marks omitted); *see also Puckett v. United States*, 556 U.S. 129, 135 (2009).

---

oppose deleting "bank fraud" from the judgment, but opposes the challenged language with respect to restitution. Because we vacate his restitution order, Frazier may raise these issues before the district court on remand.

No. 12-10874

**III.**

The MVRA delimits a district court's ability to impose restitution awards.

> [T]he court shall order the probation officer to obtain and include in its presentence report, or in a separate report . . . information sufficient for the court to exercise its discretion in fashioning a restitution order.  The report shall include, to the extent practicable, a complete accounting of the losses to each victim . . . . If the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court.

18 U.S.C. § 3664(a).  "The MVRA does not permit restitution awards to exceed a victim's loss," *United States v. Beydoun*, 469 F.3d 102, 107 (5th Cir. 2006), and "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government" who must establish losses "by the preponderance of the evidence," 18 U.S.C. § 3664(e).

Frazier argues that the district court's method for calculating restitution constituted error.  We agree.  The court adopted without question or discussion the amounts included in Frazier's PSR.  But these amounts represented the differences between the properties' original mortgage prices and their foreclosure prices, and at no point did the PSR or the district court at sentencing account for whether the mortgages were resold.

Although this court has never ruled on this specific issue, other courts have vacated restitution orders that did not account for secondary mortgage markets.  In *United States v. Yeung*, the Ninth Circuit vacated in part a district court's restitution order.  672 F.3d 594 (9th Cir. 2012), *abrogated on other grounds by Robers v. United States*, 134 S. Ct. 1854 (2014).  The *Yeung* court held that calculating lenders' losses "require[s] some adjustment when a victim

4

purchased a loan in the secondary market, that is, where the victim is the loan purchaser as opposed to the loan originator." *Id*. at 601–02.  It reasoned:

> Because the value of that loan is not necessarily its unpaid principal balance, but may vary with the value of the collateral, the credit rating of the borrower, market conditions, or other factors, the loan purchaser may have purchased the loan for less than its unpaid principal balance.  To calculate a victim's restitution award using the outstanding principal balance of the loan, if the victim only paid a fraction of that amount to obtain the loan on the secondary market, would cause the victim to receive an amount exceeding its actual losses.  Awarding such an amount would constitute plain error.

*Id*. at 602 (internal citations omitted).  Similarly, in *United States v. Chaika*, the Eighth Circuit held that where "the trial evidence suggest[s] that many fraudulently-induced mortgages were sold by the initial lender in a secondary mortgage market, . . . this greatly alters the determination of the victims' actual loss."  695 F.3d 741, 748 (8th Cir. 2012).  This is so because

> [t]he ultimate foreclosure sale price is irrelevant to an initial lender who sold the loan, while the purchasing secondary lender may not be a victim, and if it is, actual loss will turn on its purchase price in the secondary market, whether it remained on the loan all the way to foreclosure, and perhaps other factors.

*Id*.

Here, the method the district court used to calculate the restitution order cannot establish actual losses unless the government demonstrated by a preponderance of the evidence that the mortgages were never resold or, if they were, that their resale prices were the same as their face amounts.  But the government concedes that the mortgages were sold for at least three of Frazier's properties, and "likely" sold in seven others.[3]  And the government

---

[3] Frazier's PSR identifies seven banks as "victims" for twenty of the properties.  Because the straw borrower for one property was able to make the mortgage payments and keep the property, no loss was attributed to that bank for that transaction.  In its brief, the government

No. 12-10874

provides no evidence of the prices at which these mortgages were resold. This is because, as the government's case agent stated, "the records aren't very good" due to the age of the transactions.

The government thus concedes that it could not show what the resale prices were, but asks us to affirm the district court's order because it was based on the best information available.[4] As an initial matter, we are skeptical that the records for these properties are irretrievably lost. But even assuming no information can be gathered, this argument fails because the government has the burden of establishing losses under the MVRA, which requires proof through a preponderance of the evidence. 18 U.S.C. § 3664(e).

We hold that the district court erred because its method for calculating restitution does not establish actual losses suffered by the victims identified.

**IV.**

Having concluded that the district court's restitution order was error, we must still determine whether it was *plain* error. For the district court's order to be plain error, the error must have been clear and obvious, affect Frazier's "substantial rights," and "seriously affect the fairness, integrity, or public reputation of the judicial proceedings." *Jefferson*, 751 F.3d at 322. We hold that Frazier's restitution order meets the remaining three prongs of the plain error test.

"An error is considered plain, or obvious, for purposes of this court's plain error inquiry only if the error is clear under existing law." *Maturin*, 488 F.3d

---

identifies the properties for which the mortgages were sold or likely sold, based on its review of the co-defendants' restitution hearings.

[4] The government acknowledges that "the amount the secondary lienholder paid for the mortgage, minus the amount that lienholder recovered after its sale of the property, is the best measure of the restitution owed to that lienholder." Appellee's Br. 19.

at 663. As described above, the MVRA requires "a complete accounting of the losses to each victim," and the government to demonstrate the amount of loss by a preponderance of the evidence. 18 U.S.C. § 3664(a), (e). Our precedents make clear that "the purpose of the MVRA is to compensate a victim for its losses" and that a "court may not award the victim a windfall." *Beydoun*, 469 F.3d at 107–08; *see also United States v. De Leon*, 728 F.3d 500, 506 (5th Cir. 2013) ("[T]he MVRA does not permit a court to award a windfall greater than the victim's actual loss."). And while this circuit has not ruled on the specific issue of secondary mortgage markets in restitution calculations, the district court could have looked to the Ninth Circuit's discussion in *Yeung*, which found plain error under similar facts, for guidance. 672 F.3d at 602 ("Awarding such an amount would constitute plain error.").[5]

Instead, the district court accepted the PSR's restitution recommendation without requiring the government to prove that any of the "victims" suffered losses in the amounts listed. Frazier only discovered after his sentencing that some of the mortgages were resold. But that does not change our conclusion that the district court should have considered that possibility in the first instance, and insisted the government prove that the PSR's figures accurately reflected losses suffered by the banks receiving restitution. We hold that its failure to do so was clear and obvious error.

We also hold that the error affected Frazier's substantial rights. As an initial matter, the government conceded this prong in its briefing. *See* Appellee's Br. 26 (stating that "a higher restitution amount than is legal under the MVRA would affect his substantial rights" and arguing instead that Frazier "has not met the first, second, and fourth prongs of plain error"). But

---

[5] *See United States v. Hope*, 545 F.3d 293, 297 (5th Cir. 2008) (finding plain error when the Fifth Circuit had not addressed the issue but other circuits had).

even without the government's concession, we hold that a restitution amount greater than what the MVRA authorizes affects Frazier's substantial rights under prong three of the plain error test.

In *Maturin*, this court held that "[a]n error affects the defendant's substantial rights if 'it affected the outcome of the trial court proceedings.'" *Maturin*, 488 F.3d at 663 (quoting *United States v. Alarcon*, 261 F.3d 416, 423 (5th Cir. 2001)).  Where a district court erroneously ordered $164,988.98 in restitution when it could not have ordered more than $54,384.43, the *Maturin* court "easily conclude[d] that the error . . . affected the outcome of the district court proceedings and Maturin's substantial rights." *Id.*  This court held the same in *United States v. Inman*, finding plain error where a district court ordered restitution in the amount of $135,283.11 when, under the MVRA, restitution could not have exceeded $64,501.97.  411 F.3d 591, 595 (5th Cir. 2005) ("The restitution order affected Inman's substantial rights because the outcome of the district court proceedings would have been different if the error had not occurred.").  Consistent with our holdings in these cases, we hold that the district court's error affected Frazier's substantial rights.

Finally, we hold that the district court's error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (alteration in original) (internal quotation marks omitted).  "When a defendant is ordered to pay restitution in an amount greater than the loss caused, the error affects substantial rights *as well as the fairness and integrity of the judicial proceeding.*" *United States v. Austin*, 479 F.3d 363, 373 (5th Cir. 2007) (emphasis added).  Without information on the secondary mortgage market, we cannot be sure that the district court's order awarded restitution to the right parties in the correct amounts.  In light of the revelation that at least some of the properties' mortgages were resold, it is entirely possible that the "victims" identified in the PSR did not suffer losses, and instead received a

No. 12-10874

windfall. It is also possible that other, actual victims of Frazier's crimes have not been compensated. Such results would certainly affect "the fairness, integrity, or public reputation of judicial proceedings."

## V.

For the foregoing reasons, we VACATE the district court's restitution order and REMAND for resentencing.

No. 12-10874

JERRY E. SMITH, Circuit Judge, dissenting.

By granting relief on plain-error review, the majority attributes to U.S. District Judge Jorge Solis a sentence that, in the majority's view, is unfair, lacks integrity, and undermines the reputation of the judicial system. Because that criticism is unwarranted under the facts and governing law, I respectfully dissent.

Without even reaching the merits, we should summarily affirm because the only issue—restitution—is inadequately briefed. Federal Rule of Appellate Procedure 28(a)(8) states that the appellant's brief "must contain (A) appellant's contentions and the reasons for them, with citations to the authorities and parts of the record . . . ." Inadequately briefed issues are deemed waived. *Carl E. Woodward, L.L.C. v. Acceptance Indem. Ins. Co.*, 743 F.3d 91, 96 (5th Cir. 2014). This court routinely applies such a waiver even without the waiver's being noticed by the opposing party. "Indeed, in many different types of cases, we have repeatedly declined to consider issues . . . that were not adequately briefed or argued . . . ." *Goudeau v. E. Baton Rouge Parish Sch. Bd.*, 540 F. App'x 429, 437 (5th Cir. 2013) (citing a long list of Fifth Circuit cases and criticizing, as fatal, the "[f]ailure to provide any legal or factual analysis of an issue on appeal").

Frazier's counsel candidly admits that the restitution issue was not raised in the district court and that the plain-error standard of review therefore applies. Frazier's brief incants the plain-error standard but fails to explain how any of its prongs is satisfied. In his brief, he claims that the "restitution order confirms the plain error committed by the district court, which affected his substantial rights, and the fairness, integrity, and public reputation of judicial proceedings." At most, the pages that follow could be understood to address the first prong—that there was error—but nowhere does Frazier point out how, in his view, the error was plain, or how it affected his

substantial rights, or in what respect it seriously affects fairness, integrity, or reputation.

It should never be enough for an appellant merely to state the standard of review and then just say "therefore we win" without explaining how that is so. For example, if the standard of review were abuse of discretion, we would not credit a brief that showed only that there was error without specifically pointing out in what respect the error was so damaging that it amounted to an abuse of the district court's wide discretion. To the same effect here, the very point of plain-error review of alleged mistakes not brought to the attention of the district court is that to stand any chance of reversal, the appellant must show much more than mere error. And under Rule 28(a)(8), that work must be done in the opening brief. It is not the job of this court to fashion appellant's arguments for him (as the majority does here) by coming up with an analysis of how each of the four prongs of plain-error review is satisfied.

Even if Frazier had adequately briefed the plain-error test, he does not satisfy each of its prongs. As I have said, he can be deemed only to have briefed the first prong, which the majority addresses by stating, "Frazier argues that the district court's method for calculating restitution constituted error. We agree."

Any error, however, was not "plain" under the second prong. There was nothing obvious for the district court to use to announce a sentence that might not be deemed error. Frazier failed to contest the presentence report or to object to the manner of calculation. He introduced no evidence or argument regarding which mortgages were resold, which would have afforded the court the chance to decide whether it should calculate restitution differently. Thus, the district court never had the opportunity to make findings of fact on this issue. *See, e.g.*, *United States v. Garcia*, 447 F. App'x 587, 589 (5th Cir. 2011) ("Garcia presented no evidence . . . to rebut the [restitution] amounts provided

11

by the [presentence report]. . . . In any event, these are factual issues that were capable of resolution in the district court and, thus, never capable of constituting plain (clear or obvious) error.").

Regarding the third prong—substantial rights—Frazier's claim fails as well. Where, as here, the district court explicitly declined to impose a fine in light of the amount of the restitution, the defendant cannot show that his substantial rights were affected. *See, e.g.*, *United States v. Miller*, 406 F.3d 323, 330−31 (5th Cir. 2005) (Smith, J.); *United States v. Dwyer*, 275 F. App'x 269, 272−73 (5th Cir. 2008) (Smith, J.).

The majority also errs in finding the fourth prong satisfied. Its most flagrant mistake is in saying that that prong is automatic. In *United States v. Escalante-Reyes*, 689 F.3d 415, 425 (5th Cir. 2012) (en banc), this court emphasized that relief under the fourth prong is not "automatic" and that we must focus on "the particular facts of [the] case" in deciding whether to exercise our discretion to grant the exceptional relief that is inherent in plain-error review. The majority, however, treats fourth-prong relief as following naturally and as a matter of course because "[w]ithout information on the secondary mortgage market, we cannot be sure that the district court's order awarded restitution to the right parties in the correct amounts." Even if old Fifth Circuit caselaw said that excess restitution calls for fourth-prong relief, such a holding is superseded by the en banc pronouncement in *Escalante-Reyes*.

Finally, the majority overlooks that plain-error reversals should be rare and exceptional. *See id.* at 431−41 (Smith, J., dissenting); *see generally* Edward Goolsby, *Why So Serious? Taking the Word "Seriously" More Seriously in Plain Error Review of Federal Sentencing Appeals*, 51 HOUSTON L. REV. 1449 (2014). The majority's conclusional assertion that the sentence here "would certainly affect" fairness, integrity, and reputation includes no explanation of how this case is indeed exceptional. Because it is not, I respectfully dissent.